1  Edward Grutzmacher (SBN: 228649)
   ed.grutzmacher@redwoodpubliclaw.com
2  REDWOOD PUBLIC LAW, LLP
   409 13TH Street, Suite 600
3  Oakland, California 94612
   Telephone: (510) 721.3210
4
   Attorneys for Defendant CITY OF
5  SEBASTOPOL

6                                              EXEMPT FROM FILING FEES
                                               GOV'T CODE § 6103
7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12
   DAVID ALLEN YESUE; MICHAEL W.          Case No. 4:22-cv-06474-KAW
13 DEEGAN; PAIGE ELIGHTZA CORLEY;
   JESSICA MARIE WETCH; and SONOMA
14 COUNTY ACTS OF KINDNESS,               DEFENDANT CITY OF SEBASTOPOL'S
                                          MEMORANDUM IN OPPOSITION TO
15           Plaintiffs,                   PLAINTIFF'S MOTION FOR PARTIAL
                                          SUMMARY JUDGMENT
16        v.
17 CITY OF SEBASTOPOL,                    The Hon. Magistrate Judge Kandis A.
                                          Westmore
18           Defendant.
                                          Date:       September 5, 2024
19                                        Time:       1:30 p.m.
                                          Crtrm.:     A
20

21                                        Complaint Filed:   October 25, 2022
                                          Trial Date:        None Set
22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    Introduction _____ 5

II.   FACTS _____ 7

III.  STANDARD OF REVIEW _____ 13

IV.   Argument_____ 14

   A.   Plaintiffs Yesue, Wetch, and SAOK Do Not Have Standing _____ 14

   B.   The RV Ordinance Does Not Violate Plaintiffs Rights to Equal Protection. _____ 16

     1.   The Court Should Review the Ordinance Under the Standard Rational Relation Test   17

     2.   The Undisputed Facts Show that the City Did Not Enact the Ordinance to Harm a Politically Unpopular Group _____ 18

     3.   The City Had Two Legitimate Government Interests in Exacting the RV Ordinance _ 20

   C.   The RV Ordinance is Not Unconstitutionally Vague _____ 22

     1.   Plaintiffs Cannot Raise New Theories of Liability for the First Time in Their Motion for Partial Summary Judgment _____ 23

     2.   The Definition of "RV" is Not Vague_____ 23

     3.   The Establishment of Parking Restrictions by Zoning District Does Not Render the Ordinance Unconstitutionally Vague _____ 26

     4.   The Ordinance's Prohibition Against Parking an RV on a Park, Square, or Alley is Not Vague _____ 27

     5.   Plaintiffs Intentionally Conflate the Two Types of "City-related business" to Manufacture Their Vagueness Complaint_____ 27

     6.   There Is No Evidence of Arbitrary or Discriminatory Enforcement_____ 28

V.    Conclusion_____ 29

*Cases*

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986) ............................................... 14

*Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986) ............................................................. 14

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ...................................... 17

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ..................................................... 23, 29

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir.2000). ........................................... 23

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) ............................. 24, 25

*F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412 (1920) .............................................. 17

*Forbes v. Napolitano*, 236 F.3d 1009 (9th Cir. 2000) .................................................. 22, 25

*Gospel Missions of Am. v. City of Los Angeles*, 419 F.3d 1042 (9th Cir. 2005) ............ 22

*Harris v. McRae*, 448 U.S. 297 (1980) ........................................................................... 17

*Hill v. Colorado*, 530 U.S. 703 (2000) ....................................................................... 22, 24

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ............................................................................................................................. 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 14

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ......................................... 14

*Oyama v. California*, 332 U.S. 633 (1948) ..................................................................... 19

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ........................................... 29

*Plyer v. Doe*, 457 U.S. 202 (1982) ........................................................................... 17, 18

*Presidio Golf Club v. Natl. Park Serv.*, 155 F.3d 1153 (9th Cir. 1998) ........................... 15

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir.1987) ........ 14

*Tigner v. Texas*, 310 U.S. 141 (1940) ............................................................................. 17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......................................................... 15

*U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) .................................................... 19

*United States v. Crawford*, 239 F.3d 1086 (9th Cir.2001) ......................................... 26, 27

*United States v. Salerno,* 481 U.S. 739 (1987) .................................................................. 5

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982) ............ 23, 25

*Yates v. United States*, 574 U.S. 528 (2015). .................................................................. 24

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    *Zobel v. Williams*, 457 U.S. 55 (1982) ........................................................................... 19

2    ***Rules***

3    Fed.R.Civ.P. 56(c) ........................................................................................................... 14

4    ***Regulations***

5    Cal. Health & Safety Code § 18010 ................................................................................ 24

6    Cal. Health & Safety Code § 18013.4 ............................................................................. 24

7    Cal. Veh. Code § 242 ....................................................................................................... 24

8    Cal. Veh. Code § 243 ....................................................................................................... 24

9    Cal. Veh. Code § 324 ....................................................................................................... 24

10   Cal. Veh. Code § 362 ....................................................................................................... 24

11   Cal. Veh. Code § 635 ....................................................................................................... 24

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

I.    **INTRODUCTION**

Defendant City of Sebastopol ("City") has compassion for the unhoused, not, as Plaintiffs David Allen Yesue ("Yesue"), Paige Elightza Corley ("Corley"), Jessica Marie Wetch ("Wetch") and Sonoma County Acts of Kindness ("SAOK") allege, antipathy. That compassion led the City to undertake numerous efforts to assist and support the unhoused, including those unhoused residing in their recreational vehicles ("RV Dwellers"). These efforts included hiring a homeless outreach coordinator, partnering with local advocates to establish supportive housing, and helping to establish a safe recreational vehicle ("RV") parking village. These efforts also included enacting City Ordinance No. 1136 (the "RV Ordinance" or "Ordinance") to combat the public health and safety impacts to RV Dwellers, and the general public, that resulted from long-term RV encampments on City streets, which included sidewalks blocked with possessions, trash, hazardous materials, excrement and raw sewage, fires, and increased calls for emergency services.

Nevertheless, through their Complaint for Declaratory and Injunctive Relief (Dkt #1, hereinafter "Complaint") Plaintiffs seek to set aside the RV Ordinance, a parking ordinance that regulates where and when any person may park their RVs in the City. Here Plaintiffs ask for partial summary judgment on only two their Claims for Relief ("Claims") – the Fourth Claim, which alleges that the RV Ordinance violates Plaintiffs' rights to Equal Protection and the Seventh Claim, which alleges that the RV Ordinance is unconstitutionally vague. For the reasons set forth herein, neither of these claims has any merit and the Court should deny Plaintiffs' Motion for Partial Summary Judgment ("MPSJ").

At the outset, and as established in the City's previously filed Motion for Summary Judgment (Dkt #65-1 "City's MSJ"), Yesue, Wetch, and SAOK do not have the requisite Article III standing to prosecute this case and their cases should be dismissed.

Next, none of the Plaintiffs have ever been ticketed or towed under the RV Ordinance. This lack of any actual harm to any Plaintiff under the RV Ordinance means that Plaintiffs' Claims must be considered under the high standard applicable to facial challenges, which requires that "*no set of circumstances exist[] under which the Act would be valid.*" *United States v. Salerno,* 481 U.S. 739, 745 (1987) (emphasis added). Plaintiffs cannot meet this burden.

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    Plaintiffs' Fourth Claim alleges that the RV Ordinance violates Plaintiffs' rights to Equal
2    Protection "because the Ordinance is rooted in antipathy toward a politically unpopular group and
3    is not substantially related to a legitimate government interest." The facts, however, do not support
4    either "antipathy" or a lack of a legitimate government interest. The RV Ordinance is facially
5    neutral, targeting a class of vehicles, not a class of people. Moreover, the City has spent
6    considerable time and resources in seeking to assist the RV Dwellers, which are not the actions of
7    a City with antipathy towards a politically unpopular group. While the City's policy of
8    compassionate treatment of the unhoused is not shared unanimously by City residents, the fact that
9    some City residents and businesses complained to the City about the long-term RV encampments
10   does not show that the City enacted the RV Ordinance because of these complaints.

11    Rather, the City enacted the RV Ordinance for two legitimate government interests. First,
12   the City sought to address the public health and safety issues arising from the RV encampments.
13   The City enacted the RV Ordinance, which allows RV dwellers to sleep in their RVs on City
14   streets overnight, but generally prohibits daytime parking in the same locations to prevent the
15   establishment of encampments and the associated public health and safety impacts of those
16   encampments. Second, the City sought to ensure adequate parking for the general public. RVs
17   parked in public parking spaces on a long-term basis were occupying parking spaces adjacent to
18   public facilities and local businesses and preventing the general public from using those spaces.
19   For all of these reasons, Plaintiffs Fourth Claim should fail.

20    Next, Plaintiffs allege that the RV Ordinance is unconstitutionally vague. Plaintiffs raise
21   three of these vagueness claims for the first time in the MPSJ, but have not sought leave to amend
22   their Complaint. Therefore, the Court should not consider these arguments. Moreover, Plaintiffs'
23   vagueness claims are based entirely on hypothetical situations that have not occurred to Plaintiffs
24   or anyone else. Plaintiffs themselves have never been ticketed or towed under the RV Ordinance
25   and none of them have been subject to the vagueness concerns Plaintiffs bring forward now. The
26   Court should not countenance a vagueness challenge based entirely on hypothetical harms.

27    In any event, none of Plaintiffs' vagueness claims have merit. Laws do not have to be
28   written with mathematical precision; they only need to inform the public regarding the "core"

conduct that is disallowed. The Ordinance passes this test. The RV Ordinance clearly establishes that the conduct prohibited by the Ordinance is the parking of defined "RVs" in certain areas of the City. Facing this clearly proscribed conduct, Plaintiffs pick hypothetical nits with some of the Ordinance's terms. Plaintiffs first complain, despite a detailed definition of "RV," which includes numerous specifically defined vehicle types, that the definition is vague because it also includes vehicles that have been "altered for human habitation." Under tenants of statutory construction, this term must be read in the context of the other defined terms in the Ordinance and clearly limits its application to those vehicles that show a physical alteration for human habitation.

Next, Plaintiffs' new vagueness claims allege that the Ordinance is vague because it: 1) defines disallowed parking areas by zoning designation when the streets themselves are not "zoned;" 2) prohibits parking "on a park, square, or alley;" and 3) allows parking in City-owned parking lots when the driver is conducting "city-related business." To the extent the Court considers these new allegations, each argument is, again, a manufactured controversy that has not arisen for Plaintiffs or anyone else. Moreover, the only evidence Plaintiffs cite for these alleged instances of vagueness are inadmissible legal conclusions Plaintiffs elicited from City deponents. There is no actual vagueness in the Ordinance.

Moreover, Plaintiffs' concern that these terms can be used for arbitrary enforcement has no basis in the facts. Plaintiffs have not pointed to a single instance of the City's enforcement of the RV Ordinance in which any of these alleged issues of vagueness has arisen.

Because none of these allegations demonstrate unconstitutional vagueness in the Ordinance, and because no one has ever been subject to enforcement of the RV Ordinance under these hypothetical situations, the Court should reject Plaintiffs' Seventh Claim as well.

## II.    FACTS

The City's efforts to compassionately address the issues of long-term RV encampments are detailed in the City's MSJ and are incorporated herein by reference. MSJ, pp. 7-9. In summary, the City was faced with significant public health and safety impacts resulting from long-term encampments of RVs on City streets, including but not limited to: sidewalks blocked with possessions; trash, hazardous materials such as hypodermic needles, generators, and propane

tanks; excrement and raw sewage dumped on the City's sidewalks and in the City's storm drains; one RV caught fire and was damaged beyond repair; in another instance, an unhoused individual died in their RV. *Id*., pp. 7-8. Calls for police and fire services to this area became frequent with the Police Chief estimating that 20-30% of the entire calls in the City were to this area. *Id*., p. 8. In addition to these health and safety concerns, the RVs remaining in place blocked public parking and impaired access to neighboring civic uses, such as the Sebastopol Cultural Center and adjacent playing fields, as well as private businesses along Morris Street. *Id*. The City tried to manage the encampment by providing portable toilets, dumpsters, and by increasing visits to the encampment by public health and safety officials. *Id*. However, these efforts were unsuccessful and the public health and safety concerns continued to deteriorate. *Id*.

In response, the City worked with local advocates to establish the Horizon Shine RV Village, providing spaces for approximately 20 RVs, and shortly thereafter, enacted the RV Ordinance to address the concerns associated with long-term RV encampments. *Id*. at 8-9.

Despite the Claims brought in the Complaint, Plaintiffs were neither ticketed nor towed under the RV Ordinance and Yesue and Wetch no longer own RVs. *Id*. at 9-10.

Response to Plaintiffs' Undisputed Material Facts

In the MPSJ, Plaintiffs state a number of "facts," many of which are inadmissible. The City has concurrently filed Objections to Evidence in Support of Plaintiffs' Motion for Partial Summary Judgment ("Objections"), which the City incorporates herein by reference. In addition, in many instances, Plaintiffs fail to provide the full document or deposition transcript, depriving the court of the context of certain statements. The City has provided these full exhibits in the concurrently filed Declaration of Edward Grutzmacher ("City's MPSJ Dec.") Below, the City responds to each alleged undisputed fact.

The City disputes Plaintiffs' statement that the "City's residents and merchants have long opposed the presence of people living in vehicles" (MPSJ, pp. 4-6) and the evidence proffered in support of that statement as follows. In paragraph 1 (MPSJ, pp. 4-5), the quote to Ex. 26 truncates the document and does not note health and safety reasons for the complaints. The quotes to Ex. 1 do not contain full discussion, found at Dkt # 65-5, pp. 90:7-93:20 in which it is clear that

McLaughlin is explaining that by exposing more people to health and safety impacts, a "private nuisance" becomes a "public nuisance." The first quote to Ex. 5 is truncated, with the full discussion at Dkt #65-15, pp. 38:20-39:13, which explains that the majority of City residents are compassionate. The second quote to Ex. 5 is misquoted and truncated, with the full quote at Dkt #65-15, pp. 22:15-23:10 explaining Chief Nelson's opinion regarding the reasons for the Ordinance's restrictions on parking in residential areas.

In paragraph 2 (MPSJ, p. 5), the first quote to Ex. 5 is truncated, with the full quote at Dkt #65-15, pp. 19:1-20:23 explaining that complaints were based on the "humanitarian crisis" at the RV encampment. Ex. 14 contains two pages of 20-page report and states business "concerns" with RV Dwellers, not "opposition." City MPSJ Dec., Ex. 4.

In paragraph 3 (MPSJ, p. 5), the City does not dispute the quote to Ex. 5, but the quote only states Nelson's opinion that there may be people in the City that have harassed the unhoused, not that the Police have received complaints of such. The full quote is Dkt #65-15, pp. 62:3-22. The first quote to Ex. 2 is truncated, with the full quote is at Dkt #65-12, pp. 242:9-243:14. The second and third quotes are part of the same discussion at Dkt #65-9, pp. 53:1-54:25, but this is only hearsay evidence of safety issues faced by RV Dwellers.

In paragraph 4 (MPSJ, p. 5.), Ex. 15 is truncated, and the quote is taken out of context. The full discussion indicates that former Mayor Slayter's comments were directed at his opinion why the RV Ordinance should prohibit parking in residential areas, not the basis for the Ordinance itself.

In paragraph 5 (MPSJ, pp. 5-6), the City does not dispute that Ex. 16 and the quotes from Ex. 2 show that the City received complaints from business owners on Morris Street. In paragraph 6 (MPSJ, p. 6), the City does not dispute that it did not attempt to correlate the RV Dwellers to crimes. However, the City never stated that crimes committed by RV Dwellers were among the reasons for enacting the RV Ordinance.

The City disputes Plaintiffs' statement that "The City decided to use parking regulations to address the 'issue' of people living in vehicles, despite knowing that targeting unhoused people in this way was unlawful" and the evidence proffered in support of that statement as follows. In

1  paragraph 7 (MPSJ, p. 6), the quote from Ex. 6 is hearsay and does not support Plaintiffs'

2  statement in paragraph 7. The City agrees that long-term RV encampments, and the resulting

3  impacts, had been an "ongoing issue" for a number of years within the City.

4       In paragraphs 8-11 (MPSJ, pp. 6-7), Ex. 18 is one page of a four-page report and does not

5  contain many of the citations in these paragraphs. The full report details the existing conditions on

6  Morris Street in 2018 and explores various options for mitigating those conditions including

7  enforcement of existing laws, enactment of new laws, and social services. City MPSJ Dec., Ex. 1.

8  The City objects to Plaintiffs' characterization of routine police patrols as an "indirect strategy" to

9  "prohibit vehicular residency." As also noted in the report, the Police also offered services to the

10 RV Dwellers. Finally, the City objects to the discussion of the City's previous anti-camping

11 ordinance as irrelevant. That ordinance was rescinded and is not before this Court.

12      The City objects to paragraph 12 (MPSJ, p. 7) on multiple grounds. Ex. 20 contains one of

13 four pages of the minutes. The full minutes show that the Council enacted a timed parking

14 regulation on one side of Morris Street to ensure adequate parking for businesses, while leaving

15 the other side open for RV camping. City MPSJ Dec., Ex. 2. Moreover, Ex. 20 is irrelevant in that

16 it concerns a different parking ordinance not before this Court. Finally, Plaintiffs do not support

17 their statement that that ordinance was unlawful or that the Council knew it was unlawful.

18      In paragraph 13 (MPSJ, p. 7), Ex. 21 contains two pages of a 59-page City Council

19 subcommittee report. The full version details all of the efforts of the subcommittee in both

20 establishing a safe parking area for RV Dwellers and in pursuing parking changes to ensure that,

21 once the safe parking area was established, that Morris Street could be cleared of the trash, debris

22 and other accumulated items resulting from the RV encampment, and that new parking rules

23 would be in place so similar encampments did not form in the future.  City MPSJ Dec., Ex. 3.

24      The City disputes Plaintiffs' statement that "The City acknowledged that the HHV

25 Ordinance was enacted to target vehicularly housed people" and the evidence proffered in support

26 of that statement is as follows. In paragraphs 14 and 15 (MPSJ, pp. 7-8): the City does not dispute

27 these facts. The RV Ordinance speaks for itself.

28      In paragraph 16 (MPSJ, p. 8): the City does not dispute that it never hired a consultant to

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

conduct a parking availability study. The City does dispute that such a study was necessary or legally required. As multiple sources show, the parking issues resulting from the RV encampment were a known issue in the City and were personally observed by City staff and Council members. Dkt #65-5, p. 56:16-24, Dkt #65-9, pp. 36:9-39:3, City MPSJ Dec., Ex. 4, p 10. (1/18/22)

The City disputes the entirety of paragraph 17 (MPSJ, p. 8). The City never admitted that adopting parking regulations to ensure there is adequate parking could not be supported by the facts. Moreover, Plaintiffs misquote Ex. 26. There, Chief Connor stated that "it would be difficult to articulate a defendable reason for 2- or 3-hour Parking restrictions on Morris Street *beyond the late afternoon*." No facts support Plaintiffs assumption that the parking situation on Morris Street in 2018 was the same as in 2021-2022 when the City was considering and adopting the RV Ordinance. Also, the RV Ordinance does not prohibit overnight parking, which is in line with the former Chief's recommendations while taking into account the changed circumstances.

In paragraph 18 (MPSJ, pp. 8-9, the quotes to Ex. 6 are truncated and obscure the full discussion of former Chief Kilgore's opinion on the purposes behind the RV Ordinance. The full discussion is from Dkt #65-16, pp. 91:19-94:22 and includes discussion of allowing clean-up of the public health and safety issues on Morris Street and ensuring such issues did not arise again. The first and third quotes to Ex. 1 are also truncated. The full discussions are at Dkt #65-5, pp. 36:11-38:25 and 57:7-59:25. The quote from Ex. 25 is taken out of context and is inadmissible testimony regarding a legal conclusion. Prior to the enactment of the Ordinance, Kilgore was attempting to explain to a constituent his opinion on the differences between parking restrictions for long-term RV parking, and the short-term exception for loading/unloading at a residence.

The City disputes that Plaintiffs' statement that "Multiple provisions of the HHV Ordinance are vague" is a statement of fact at all. MPSJ, p. 9. It is a legal opinion. The City further disputes this statement and the evidence proffered in support of this statement as follows. In paragraph 19 (MPSJ, p. 9): the RV Ordinance speaks for itself; however, Plaintiffs have not cited the full definition of "RV" in the ordinance.

In paragraph 20 (MPSJ, p. 9): the City agrees with Chief Nelson's opinion of the meaning of "RV" under the ordinance. The quote, however, is truncated. The full quote is found at Dkt

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

#65-15, pp. 26:16-29:6. Similarly, the City agrees with Mayor Rich's opinion, though that quote is truncated as well. The full quote is found at Dkt #65-9, pp. 68:15-72:24. These statements, however, constitute opinion, not facts. Likewise in paragraph 21 (MPSJ, p. 9), the statements quoted are opinions, not facts. The first two quotes from Ex. 6 are part of the same discussion and should include the entire discussion which is found at Dkt #65-16, pp. 30:24-33:4. The quote to Ex. 1, 47:20-25 is truncated and should include the entire discussion which is found at Dkt #65-5, pp. 46:18-48:6 in which McLaughlin ultimately also concludes that "altered" requires a "change to the physical characteristics" of a vehicle.

In paragraph 22 (MPSJ, p. 9), the City agrees it is undisputed that the City has never adopted written guidance, formal policies, or training for the term "altered for human habitation."

In paragraph 23 (MSPJ, p. 10), the RV Ordinance speaks for itself.

In paragraph 24 (MSPJ, p. 10), the City objects that the statement "[r]eference to how a 'street' is 'zoned' is ambiguous" is a conclusion of law, not a statement of fact. In addition, McLaughlin's testimony regarding the legal application of "zoning" to "streets" is not fact, but legal opinion. Moreover, the quote is truncated, with the full quote from Dkt #65-5, pp.70:25-71:24 explaining that McLaughlin was confused by the application of zoning "uses" to streets.

In paragraph 25 (MPSJ, p. 10), the City agrees that, where a street is zoned one district on one side of the street and a different district on the other side, different parking regulations may apply to the different sides of the street. The City objects that the legal conclusion that this makes it "uncertain whether, or when, an RV could be parked" is not a statement of fact and further disagrees with that legal conclusion.

In paragraph 26 (MSPJ, p. 10), the City agrees that there are no physical signs posted in the City designating zoning districts. The City further notes that the City's zoning map is available on the City's website as shown in Dkt #63-1, p. 168.

In paragraph 28 (MPSJ, p. 10), Chief Nelson's statement is inadmissible speculation and legal opinion.

In paragraphs 30 and 31 (MPSJ, p. 11), the City agrees that the zoning map does not contain definitions for the CD or PC districts. Districts are defined in the Zoning Code, with the

1  CD district being defined as a "commercial, office, and industrial" district, and the PC district

2  being defined as a special district. City's MPSJ Dec., Ex. 6 ("CD" defined in Chapter 17.25 and

3  "PC" defined in Chapter 17.40). However, the citations to City official's understanding of the law

4  are irrelevant since their legal conclusions, if they had such conclusions, would be inadmissible.

5        The City objects to paragraphs 33, 35, 36, and 38 in that they consist entirely of

6  inadmissible legal conclusions. MPSJ, pp. 12, 13.

7        In paragraphs 34 and 39 (MPSJ, pp. 12, 13.), the RV Ordinance speaks for itself.

8        The City objects to the entirety of paragraph 37 because it consists of Plaintiffs' legal

9  conclusions, not facts. MPSJ, pp. 12-13.

10        The City objects to paragraph 40 in that it consists entirely of inadmissible legal

11  conclusions. MPSJ, p. 13. That said, the discrepancy between the application of "City-related

12  business" by City deponents is attributable to the Ordinance's requirements that for lots dedicated

13  to particular departments (e.g. Police, Fire), "City-related business" means only business with

14  those departments, while for other lots "City-related business" means any business in the City.

15        The City does not dispute the facts in paragraphs 27, 29, or 32. MPSJ, pp. 10-11.

16        The City disputes Plaintiffs' statement that "Sebastopol Police promise to engage in

17  discriminatory enforcement" (MPSJ, p. 14) and the evidence proffered in support of that statement

18  as follows. In paragraph 40, the quote from Ex. 6 is truncated. The full discussion can be found at

19  Dkt #65-15, pp. 34:14-36:17, which shows a compassionate approach to enforcement, not a

20  promise to engage in discriminatory enforcement.

21        In paragraph 41, Ex. 24 contains three pages of the 36-page minutes. See City MPSJ Dec.,

22  Ex. 5 (full copy).  In the passage that Plaintiffs cite, former Chief Kilgore is responding to a

23  question from a Council member regarding the "altered for human habitation" portion of the RV

24  Ordinance, explaining why that provision is necessary, but also assuring the Council that the

25  Police will be using the definition to further the purposes of the Ordinance rather than as a tool for

26  aggressive enforcement.  These statements do not promise discriminatory enforcement.

27  **III.    STANDARD OF REVIEW**

28        A motion for partial summary judgment is proper "if the pleadings, depositions, answers to

1   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

2   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

3   of law." Fed.R.Civ.P. 56(c). The purpose of partial summary judgment "is to isolate and dispose

4   of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986).

5   The moving party "always bears the initial responsibility of informing the district court of the

6   basis for its motion and identifying those portions …which it believes demonstrates the absence of

7   a genuine issue of material fact." *Id*. at 323. The non-moving party must then identify specific

8   facts "that might affect the outcome of the suit under the governing law," thus establishing that

9   there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

10       When evaluating a motion for partial summary judgment, the court views the evidence

11  through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v.*

12  *Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor

13  of the non-moving party, including questions of the credibility and of the weight of the evidence.

14  See *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, (1991). The court determines

15  whether the non-moving party's "specific facts," coupled with disputed background or contextual

16  facts, are such that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec.*

17  *Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987).

18      **IV.**    **ARGUMENT**

19          **A.**      **Plaintiffs Yesue, Wetch, and SAOK Do Not Have Standing**

20       Plaintiffs Yesue, Wetch, and SAOK have not established facts showing that they have

21  Article III standing. To "satisfy Article III's standing requirements, a plaintiff must show (1) it has

22  suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

23  conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

24  defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by

25  a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

26       "An organizational plaintiff has standing if it alleges: (1) injury in fact; (2) causation; and

27  (3) redressability." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624

28  F.3d 1083, 1088 (9th Cir. 2010). Injury can be established where the organization suffered "both a

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

diversion of its resources and a frustration of its mission" but it "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.... It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id*.

In addition to the constitutional standing requirements, courts have erected "prudential barriers" and concluded that a "membership organization can sue in its representative capacity when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Presidio Golf Club v. Natl. Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998).

Yesue and Wetch have not demonstrated that they were either injured in fact by the RV Ordinance or that they have anything more than a highly speculative fear that they will be harmed by the Ordinance in the future. Yesue and Wetch were not ticketed or towed under the RV Ordinance, nor ever subject to the Ordinance because neither had an RV parked on City streets after the enactment of the Ordinance. Dkt #65-4, Ex. 10, p. 6, Ex. 11, pp. 24:25-26:11, 52:12-24, Ex. 12, p. 5, Ex. 13, pp. 12:19-13:5, 13:15-16, 16:1-11, 17:12-14, 17:17-19. Yesue and Wetch cannot establish redressable harm where they were never ticketed or towed under the Ordinance.

Moreover, because Yesue and Wetch no longer own RVs, they cannot be subject to future enforcement of the RV Ordinance. Article III standing cannot be based on speculation that they may again own RVs at some point in the future and, at that time, be subject to the RV Ordinance should they chose to park those hypothetical RVs in the City. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438 (2021).

SAOK does not have either organizational or associational standing. SAOK lacks organizational standing because SAOK was not harmed in any way by the RV Ordinance. SAOK does not own any RVs. Dkt #65-4, Ex. 16, pp. 21:17-22:3. In the Complaint, SAOK alleged that the RV Ordinance frustrated SAOK's mission and that it "had to divert resources, because many of the people it has assisted in Sebastopol have dispersed or gone into hiding." Complaint, ¶ 16. In deposition, however, SAOK testified that its volunteers had no problem locating the unhoused

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

residing in their vehicles in the City and, indeed, that searching for the unhoused to deliver meals and other supplies is part of SAOK's standard operations. Dkt #65-4, Ex. 16, pp. 13:15-15:10, 15:18-16:11. Thus, there is no evidence that SAOK's mission was "frustrated" by the RV Ordinance or that SAOK had to expend funds to counteract the perceived negative effects of the RV Ordinance. Therefore, SAOK does not have standing to sue on its own behalf. Furthermore, SAOK cannot establish associational standing to sue on behalf of its members because SAOK does not have any members. Dkt #65-4, Ex. 16, p. 11:12-14.

Consequently, the undisputed facts show that Yesue, Wetch, and SAOK have not established Article III standing and their Complaints should be dismissed.

**B.    The RV Ordinance Does Not Violate Plaintiffs Rights to Equal Protection.**

Plaintiffs' Fourth Claim, that the Ordinance violates Plaintiffs' rights to equal protection is based on flawed assumptions, mischaracterizations, and unsupported facts. First, Plaintiffs incorrectly assume that the Ordinance is directed at a disfavored group, specifically the RV Dwellers. However, on its face, the Ordinance is addressed to the parking of a specific type of vehicle, RVs, and makes no distinction regarding who operates that RV. Second, Plaintiffs incorrectly assume that all they need to prove that the Ordinance was enacted based on antipathy is that some small fraction of the public expressed views disfavoring RV Dwellers. The law requires that Plaintiffs show that the City itself enacted the Ordinance in order to harm a politically unpopular group, not simply that members of the public expressed disfavor towards that group. Under the correct standard, Plaintiffs have not, and cannot show that the City enacted the Ordinance based on antipathy towards RV Dwellers. Next, Plaintiffs mischaracterize the legitimate government interests which served as the basis for the ordinance. The City enacted the Ordinance to prevent the harms to public health and safety, including the health and safety of the RV Dwellers, that resulted from long-term RV encampments. The objective was not, as Plaintiffs allege, to deter RV Dwellers from residing in the City. Finally, Plaintiffs incorrectly assume that the City's second interest, to ensure adequate daytime access to public parking spaces, required the City to hire an expert consultant to prepare a parking study. Plaintiffs have identified no such legal

1    requirement and, in a small town such as Sebastopol, first-hand observations of City staff and

2    Council members of the lack of parking availability on a regular, and sometimes daily basis is

3    sufficient support for this interest. For all these reasons, Plaintiffs' Fourth Claim must fail.

4        "The Equal Protection Clause directs that "all persons similarly circumstanced shall be

5    treated alike." *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). It is also true,

6    however, that "[t]he Constitution does not require things which are different in fact or opinion to

7    be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).  The

8        "initial discretion to determine what is 'different' and what is 'the same' resides in the
         legislatures of the States. A legislature must have substantial latitude to establish
9        classifications that roughly approximate the nature of the problem perceived, that
         accommodate competing concerns both public and private, and that account for limitations
10       on the practical ability of the State to remedy every ill. In applying the Equal Protection
         Clause to most forms of state action, we thus seek only the assurance that the classification
11       at issue bears some fair relationship to a legitimate public purpose."

12   *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

13       In *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985), the Supreme Court

14   articulated the different standards that courts should apply when examining the classifications

15   made by a legislature in enacting a law. Classifications based on race, alienage, or national origin

16   are subject to "strict scrutiny and will be sustained only if they are suitably tailored to serve a

17   compelling state interest." *Id*. at 440. Gender classifications are examined under a "heightened"

18   standard of review and fail "unless it is substantially related to a sufficiently important

19   governmental interest." *Id*. at 441. Where "individuals in the group affected by a law have

20   distinguishing characteristics relevant to interests the State has the authority to implement, the

21   courts have been very reluctant, as they should be in our federal system and with our respect for

22   the separation of powers, to closely scrutinize legislative choices as to whether, how, and to what

23   extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a

24   rational means to serve a legitimate end." *Id*. at 441–42. "[P]overty," however, "standing alone is

25   not a suspect classification."  *Harris v. McRae*, 448 U.S. 297, 323 (1980).

26               1.    The Court Should Review the Ordinance Under the Standard
                       Rational Relation Test

27

28       Plaintiffs argue that this Court should apply a heightened standard of review because the

17

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Ordinance creates a classification based on the socioeconomic status of RV Dwellers. MPSJ, pp 21, fn 9. On its face, however, the Ordinance makes no distinction based on socioeconomic status. Indeed, the Ordinance does not create classifications based on any characteristic of people whatsoever. The plain language of the RV Ordinance applies to *vehicles*, not people. The parking restrictions apply whether the person operating the RV is a homeowner looking to store their RV on City streets, an out-of-town visitor looking to camp in their RV during their visit to the City, or an unhoused person whose RV is their primary place to live. Thus, the Court should apply the rational relation test and not a heightened level of scrutiny in its examination of the Ordinance.

2. The Undisputed Facts Show that the City Did Not Enact the Ordinance to Harm a Politically Unpopular Group

Next, Plaintiffs attempt to achieve a heightened standard of review by arguing that the City enacted the Ordinance based on the "irrational prejudice' expressed [by] residents, to whom the City Council was clearly responsive." MPSJ, p. 21. This, Plaintiffs claim, requires the Court to "engage in a searching examination of government's proffered objectives and the means adopted to achieve them." *Id*. at 20. Plaintiffs are wrong on both the law and the facts.

a. The Ordinance Does Not Target a Politically Unpopular Group.

Plaintiffs are incorrect in both their assumption that the Ordinance targets the RV Dwellers and their assumption that RV Dwellers are a politically unpopular group. Again, the Ordinance does not mention RV Dwellers at all. It applies to RVs regardless of who owns or operates the RV. Thus, the Ordinance is distinguishable from the laws in the several cases cited in the MPSJ. For example, Plaintiffs cite to *Cleburne*, in which the city discriminated against the mentally incapacitated on the basis of their status and required a special permit for their group home when the city did not require permits for other group living facilities. 473 U.S. at 448-50; MPSJ, p. 21. Similarly, in *Plyer v. Doe*, 457 U.S. 202, 216 (1982) Texas laws withheld public education funding to school districts for children who were not "legally admitted" to the United States while providing funding for children who were legally admitted to the United States, creating classifications of children based on immigration status. In *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973), the statute prohibited access to the food stamp program for "households"

that consisted of any unrelated people while allowing access to the program for households made up entirely of related people. See also, *Oyama v. California*, 332 U.S. 633, 646 (1948) (statute discriminating between citizens on the basis of their racial descent; *Zobel v. Williams*, 457 U.S. 55, 61-65 (1982) (statute providing differing amount of benefits depending on how long person had been resident of the state).

Here, the RV Ordinance makes no such distinctions between housed RV owners and unhoused RV owners. Therefore, the heightened scrutiny applied in cases where the legislature targets a particular group of people does not apply to the Ordinance.

> b.  The Negative Views of a Minority of City Residents Are Not Attributable to the City as a Whole

Even if the Court were to accept that the facially neutral RV Ordinance somehow draws classifications between unhoused RV owners and all other RV owners, Plaintiffs still fail to show that the City acted with discriminatory intent.

To support their theory that RV Dwellers are a politically unpopular group that the City sought to harm through the Ordinance, Plaintiffs misquote *Cleburne* to create a nearly impossible standard for any jurisdiction to meet. According to Plaintiffs, it is "irrelevant to the equal protection analysis" whether the City itself acted with a discriminatory motive so long as a discriminatory motive was "articulated by 'some fraction of the body politic.'" MPSJ, p. 21, fn. 9.[1]  In other words, under Plaintiffs' standard, so long as some portion of residents, however small a "fraction" that may be, articulate a discriminatory motive in support of proposed legislation, that discriminatory motive is attributed to the legislative body and the reviewing court must assume that the legislative body enacted the legislation with the discriminatory motive stated by this "fraction" of the body politic. This standard would be unworkable in practice, would exponentially increase the number of laws for which courts would need to assume were based on a discriminatory motive, and would require the citizenry to significantly censor their speech lest

---

[1] Plaintiffs' admission that "some City Council members expressed compassion towards unhoused people" is, by itself, enough to create an issue of disputed fact regarding whether the City enacted the Ordinance out of antipathy or compassion towards the RV Dwellers and to defeat the MPSJ.

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

they jeopardize the legislation they support with a careless word.

Fortunately, this is not what *Cleburne* said. There, the "District Court found that the City Council's insistence" on a permit for group housing for the mentally incapacitated "rested on several factors," the first of which was that "the Council was concerned with the negative attitude … [and] fears" of nearby residents. 473 U.S. at 448. "[M]ere negative attitudes, or fear," were insufficient grounds for the city in that case to base discriminatory legislation and the city "may not avoid the strictures of that Clause by *deferring* to the wishes or objections of some fraction of the body politic." *Ibid*. (emphasis added). Thus, the holding of *Cleburne* is that bowing to the discriminatory views of the public is not a legitimate reason for enacting discriminatory legislation, not that any expression of a discriminatory viewpoint by the public is automatically attributable to the legislature as the reason for enactment of the legislation.

Therefore, to prove discriminatory intent, Plaintiffs need to show more than the fact that some members of the public expressed bias towards RV Dwellers. They must show, based on undisputed facts, that the City Council's reason for enacting the Ordinance was because of these statements. Plaintiffs make no effort to provide such undisputed facts, nor can they. To the contrary, the undisputed facts show that the City expended significant time and resources in supporting the unhoused in general, and RV Dwellers in particular. Dkt #65-1, pp.7-8 and evidence cited therein. The undisputed facts also show that the City enacted the Ordinance out of a concern for the health and safety of the RV Dwellers in long-term RV encampments. Dkt #63-3, p.8. On the other hand, Plaintiffs' "facts" in support of their theory that RV Dwellers were a politically unpopular group amount to little more than hearsay and conjecture.

        3.    The City Had Two Legitimate Government Interests in Exacting the RV Ordinance

The City articulated two legitimate government interests in enacting the RV Ordinance: to mitigate the documented public health and safety impacts that occurred in the City as a result of long-term RV encampments and to protect the City from such impacts occurring in the future; and to free up public parking spaces near public facilities and local businesses during the daytime hours when those facilities and businesses were in use. Plaintiffs mischaracterize the first reason

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    and improperly discount the second.

2         The public health and safety issues associated with long-term RV camping are not in

3    dispute. Dkt #65-1, pp.7-8 and evidence cited therein. Instead, Plaintiffs misconstrue the City's

4    intent to mitigate these impacts through the RV Ordinance with a discriminatory intent to target

5    people who live in their RVs.  Specifically, Plaintiffs claim that statements made by City officials

6    that the RV Ordinance was intended to prevent "overnight parking problems" or to "prevent

7    people from remaining in vehicles 24 hours a day" indicate an intent to discriminate against RV

8    Dwellers. However, the reason for the public health and safety impacts that the City sought to

9    mitigate and prevent was the long-term, or "24 hours a day" RV camping, not just living in

10   vehicles. That is why the City continued to allow overnight parking on City streets.

11        Regarding the City's second interest, Plaintiffs have pointed to no legal requirement that

12   the City must hire a consultant to perform a parking study before enacting parking restrictions.

13   Members of the public stated at City Council meetings that the RVs were causing parking issues

14   on Morris Street and members of the City Council and City staff personally observed such

15   conditions on a regular basis.  See pp. 7-8, supra, and evidence cited therein. These personal

16   observations were more than sufficient to establish the need to prevent RVs from occupying

17   public parking spaces for long periods of time and freeing those spaces for the general public.

18        Plaintiffs also mischaracterize the evidence in claiming that the City's interest in making

19   spaces available for the general public was "pretextual." Plaintiffs' citation to former Police Chief

20   Connor's 2018 report to the City Council is irrelevant, and misquoted. It is irrelevant because the

21   report detailed conditions on Morris Street as they existed in 2018, not the conditions as they

22   existed at the enactment of the Ordinance in 2022. Plaintiffs also misquote the report, claiming

23   Chief Connor "admitted that a claimed shortage was not a 'defendable reason' for parking

24   restrictions." MPSJ, p. 22. What Chief Connor's report actually stated was that "it would be

25   difficult to articulate a defendable reason for 2 or 3-hour Parking restrictions on Morris Street

26   *beyond the late afternoon*" not that timed daytime parking restrictions were themselves

27   indefensible. Dkt #63-3, p.26. In line with these comments, though taking into account the

28   changed circumstances during the three-year period between Chief Connor's report and the

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   enactment of the Ordinance, the Ordinance does not seek to restrict RV parking overnight because,

2   admittedly, the general public is not using those spaces during the nighttime hours. None of

3   Plaintiffs proffered evidence shows that the City's interest in protecting public spaces for general

4   public use during the daytime hours was "pretextual."

5       Therefore, the undisputed facts show that the City relied on two legitimate government

6   interests in prohibiting long-term RV parking in the City.

7                    **C.    The RV Ordinance is Not Unconstitutionally Vague**

8       Plaintiffs newly allege three grounds for vagueness – that the RV Ordinance is vague with

9   regards to parking restrictions established by zoning district, with regards to parking restrictions

10  "on a park, square, or alley," and with regards to parking allowances for "City-related business" –

11  for the first time in the MPSJ.  The Court should disregard these claims entirely.

12      On the merits, Plaintiffs' facial challenge to the RV Ordinance is based on hypothetical

13  harms to hypothetical people. Complaint, ¶¶ 89-93. Plaintiffs were never ticketed nor towed under

14  the RV Ordinance and, thus, were never harmed by any of the allegedly vague provisions of the

15  RV Ordinance. Nor do Plaintiffs provide evidence that they were confused regarding where they

16  would be allowed to park their RVs (when Plaintiffs owned RVs) or regarding what activities

17  would constitute "City-related business" allowing for RV parking in City-owned lots during

18  business hours. The Court should reject Plaintiffs' attempt to generate controversy where none

19  exists and should refrain from analyzing these hypothetical applications of the law.

20      "An ordinance is unconstitutionally vague 'if it fails to provide people of ordinary

21  intelligence a reasonable opportunity to understand what conduct it prohibits,' or 'if it authorizes

22  or even encourages arbitrary and discriminatory enforcement.'" *Gospel Missions of Am. v. City of*

23  *Los Angeles*, 419 F.3d 1042, 1047 (9th Cir. 2005), citing *Hill v. Colorado*, 530 U.S. 703, 732

24  (2000). However, "[s]tatutes need not be written with "mathematical" precision, nor can they be

25  thus written." *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000). Rather, "they must be

26  intelligible, defining a 'core' of proscribed conduct that allows people to understand whether their

27  actions will result in adverse consequences." *Ibid*. "A statute is vague on its face when 'no

28  standard of conduct is specified at all. As a result, men of common intelligence must necessarily

guess at its meaning.'" *Id.*, citing *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). However, "speculation about possible vagueness in hypothetical situations not before [us] will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733. In a facial challenge to an ordinance on vagueness grounds, the Court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). Moreover, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Ibid.*

        1.      Plaintiffs Cannot Raise New Theories of Liability for the First Time in Their Motion for Partial Summary Judgment

Plaintiffs raise three new theories of vagueness for the first time in their MPSJ. The Seventh Claim does not allege that the RV Ordinance is vague with regards to parking restrictions established by zoning district (MPSJ, pp. 10-12, 17-18), with regards to parking restrictions "on a park, square, or alley" (*id.* at pp. 12-13, 18), or with regards to parking allowances for "City-related business" (*id.* at pp. 13, 18.) Complaint, ¶¶ 89-93. Plaintiffs have not sought leave to amend the Complaint, nor have Plaintiffs offered any justification for the failure to do so. Indeed, Plaintiffs would be hard pressed to offer any such justification considering that the RV Ordinance has not changed since the time Plaintiffs filed the Complaint and Plaintiffs could have sought leave to add these new theories at any time before the close of discovery. Because Plaintiffs did not do so, the Court should not consider these new theories of vagueness raised for the first time in the MPSJ. See *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–94 (9th Cir.2000).

        2.      The Definition of "RV" is Not Vague

Plaintiffs complain that the RV Ordinance is unconstitutionally vague because the Ordinance's definition of "RV" does not provide people of "ordinary intelligence" with sufficient notice of what constitutes an "RV." SMC section 10.76.030, however, clearly defines "RV" as

> "a motorhome, travel trailer, truck camper, camping trailer, or other vehicle or trailer, with or without motive power, designed or altered for human habitation for recreational, emergency, or other human occupancy. 'Recreational vehicle' specifically includes but is not limited to: a 'recreational vehicle' as defined by Cal. Health & Safety Code § 18010; a

23

'truck camper' as defined by Cal. Health & Safety Code § 18013.4; a 'camp trailer' as defined in Cal. Veh. Code § 242; a 'camper' as defined in Cal. Veh. Code § 243; a 'fifth-wheel travel trailer' as defined in Cal. Veh. Code § 324; a 'house car' as defined by Cal. Veh. Code § 362; a 'trailer coach' as defined in Cal. Veh. Code § 635; a van camper; or a van conversion."

Plaintiffs claim that the terms "altered for human habitation" within this definition are too vague for any common understanding and will lead to arbitrary and discriminatory enforcement.

First, none of the Plaintiffs, even when they all owned RVs, would have had any doubt that the ordinance applied to them. Corley currently owns a "fifth wheel," which is specified as an RV in the Ordinance. Dkt #65-4, Ex. 14, p.19:24-20:11. Yesue and Wetch also both owned vehicles they understood to be "RVs." *Id*. at Ex. 10, p. 4; Ex. 12, p. 4; Ex. 13, pp. 13:17-14:8. Thus, Plaintiffs' concerns about the alleged vagueness of the RV Ordinance are completely hypothetical concerns that would only apply to unknown third parties.

Second, the term "altered for human habitation" is not vague. The canon of "ejusdem generis counsels: '[W]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates v. United States*, 574 U.S. 528, 545 (2015). Here, the term "altered for human habitation" follows a list of specifically defined vehicle types and must be read in the context of those examples.  Moreover, the term "altered" modifies the words "or other vehicle or trailer" and clearly intends to describe the circumstances when a person alters a vehicle or trailer itself to make it fit for "human habitation." While it is possible that reasonable people may differ regarding the extent of alteration necessary to convert a vehicle into an "RV" "speculation about possible vagueness in hypothetical situations not before [us] will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733. Here, people of ordinary intelligence will be able to determine, in the vast majority of circumstances, whether their vehicle constitutes an RV.

Plaintiffs attempt to establish vagueness through comparison to laws found unconstitutionally vague in other instances, but these cases are inapposite. In *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), Los Angeles' ordinance prohibited using a vehicle "as living quarters either overnight, day-by-day, or otherwise." *Id*. at 1149. The 9th Circuit held that

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   the ordinance was unconstitutionally vague as to the conduct it prohibited and actually encouraged

2   arbitrary and discriminatory enforcement. Los Angeles police made arrests and issued citations for

3   such disparate conduct as sleeping in a car, having personal possessions in a car, eating food in a

4   car, sitting in a car to be out of the rain, and driving through the City in an RV. *Id*. at 1150-1152.

5   The ordinance, "offers no guidance as to what conduct it prohibits." *Id*. at 1155. Here, there is no

6   evidence here of any confusion by the City's Police or RV Dwellers about what "RV" means.

7   Unlike *Desertain*, Plaintiffs were not cited under the RV Ordinance and the RVs they own, or did

8   own, are unambiguously subject to the RV Ordinance. In addition, there is no evidence showing a

9   history of arbitrary or discriminatory enforcement of the Ordinance. Finally, there is no dispute

10  that the conduct proscribed by the Ordinance is the parking of RVs in certain areas of the City at

11  certain times of the day. The "danger" posed by the alleged vagueness is completely hypothetical.

12  Plaintiffs' concerns that someone, at some point in the future might be subject to enforcement

13  because it is not readily apparent that their vehicle has been sufficiently "altered" to fall under the

14  definition of an "RV" do not show that the RV Ordinance is "impermissibly vague in all of its

15  applications." *Vill. of Hoffman Ests*., 455 U.S. at 495.

16      Similarly, *Forbes*, supra, involved a criminal statute prohibiting any medical

17  "experimentation" or "investigation" involving fetal tissue from induced abortions unless

18  necessary to perform a "routine pathological examination." 236 F.3d at 1010. Because the statute

19  at issue was a criminal statute, the "vagueness review [was] even more exacting" and required that

20  the law "not be impermissibly vague in any of its applications."  As in *Desertrain*, the concern

21  with these terms was that they made it unclear what the statute was prohibiting. "Experimentation"

22  or "investigation" to one doctor might be treatment to another. *Id* at 1012-1013. Conversely, here,

23  the Ordinance is not a criminal statute and, thus, not subject to a more "exacting" review and the

24  prohibited conduct is unambiguously the parking of RVs on City streets.

25      Finally, Plaintiffs attempt to generate vagueness issues by relying on inadmissible (and

26  misquoted) lay testimony concerning the meaning of the RV Ordinance in order to create the false

27  impression that the City itself does not know what constitutes an "RV." MPSJ, pp. 16-17. Legal

28  conclusions, when presented as lay testimony, are inadmissible.  *United States v. Crawford*, 239

F.3d 1086, 1090 (9th Cir.2001); see also Objections. Thus, the testimony of City deponents regarding their interpretations of the RV Ordinance are inadmissible and irrelevant to the actual meaning of the RV Ordinance. As such, Plaintiffs have failed to demonstrate that the Ordinance's definition of "RV" is unconstitutionally vague.

   3. The Establishment of Parking Restrictions by Zoning District Does Not Render the Ordinance Unconstitutionally Vague

  Next, Plaintiffs complain the Ordinance is vague because it designates parking restrictions by zoning district within the City. MPSJ, pp. 17-18. Again, however, Plaintiffs do not provide evidence that they, or anyone else, were ever confused regarding where it is legal to park an RV and where it is not. Plaintiffs' facial challenge based on hypothetical circumstances does not show that the Ordinance is unconstitutionally vague in all its applications.

  On its face, the RV Ordinance: 1) prohibits RV parking in any area zoned residential at any time and 2) prohibits RV parking in any area zoned commercial, industrial, or community facility between the hours of 7:30 a.m. and 10:00 p.m. Dkt #63-1, p. 165. These are clear and unambiguous restrictions regarding where RV's may park.

  Plaintiffs attempt to generate vagueness issues through a series of hypotheticals, which have never happened either to Plaintiffs or to anyone else. First, Plaintiffs claim that the Ordinance is vague because, technically, the streets themselves are not "zoned." MPSJ, p. 17. While it is true that a residential street is not "zoned" residential in the sense that someone could construct a residence on the street, it is still a residential street within a residential district and would be clear to people of ordinary intelligence that parking on that street would be prohibited by the Ordinance.

  Next, Plaintiffs pose the hypothetical regarding streets that border two zoning districts, such as a park, which is zoned community facility, and a residential area, which is zoned residential. *Ibid*. The correct interpretation of the RV Ordinance is that the side of the street adjacent to the residences is subject to the restrictions for residential districts while the side adjacent to the park is subject to the restrictions on community facilities districts. Again, however, there has never been an occasion for the City to offer an interpretation for this hypothetical situation because the City has never sought to apply the RV Ordinance in such a manner.

DEFENDANT CITY OF SEBASTOPOL'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Finally, Plaintiffs point to two areas of the City that are not zoned either residential, commercial, industrial, or community facility such as "Downtown Core" and Planned Community." The answer to these hypotheticals is that the City's Municipal Code groups zoning districts by type and hypothetical future RV drivers can consult the Municipal Code to see whether a particular district falls within a Residential, Commercial, Industrial, or Community Facilities district or otherwise.  See City MPSJ Dec., Ex. 6. [2]

Thus, the Ordinance's restriction of RV parking by zoning district does not generate any actual or hypothetical vagueness concerns.

4.    The Ordinance's Prohibition Against Parking an RV on a Park, Square, or Alley is Not Vague

Plaintiffs' next hypothetical vagueness concern is with the RV Ordinance's prohibition against parking an RV "on a park, square, or alley." MPSJ, p. 18. Again, Plaintiffs have no evidence that either they or anyone else has been cited for violation of the RV Ordinance because of confusion regarding this provision. Moreover, the language of the Ordinance is unambiguous. City Municipal Code Section 10.76.040.C states that "It is unlawful for a person to park or leave standing any recreational vehicle on any park, square, or alley at any time."  The plain language means what it says.  RV parking is not allowed on any park square or alley at any time.

Plaintiffs attempt to sow confusion into this plain language through hypotheticals posed to City deponents regarding their personal interpretations of what this language means. MPSJ, pp. 12-13. Personal legal interpretations are inadmissible and cannot override the plain meaning of the Ordinance.  *Crawford*, 239 F.3d at 1090. Therefore, Plaintiffs' hypotheticals to City deponents cannot create an ambiguity in the plain language where none exists.  The Ordinance states a prohibition against parking an RV *on* a square, park, or alley, which means that RVs are not allowed to be parked on a square, park, or alley.

5.    Plaintiffs Intentionally Conflate the Two Types of "City-related business" to Manufacture Their Vagueness Complaint

---

[2] The Municipal Code also contains Open Space Districts (Chapter 17.40) and Wetlands Districts (Chapter 17.44), but, notably, Plaintiffs do not argue they are confused regarding whether RVs may park in these districts.

Plaintiffs' fourth allegation regarding vagueness in the Ordinance is an intentional conflation of two separate sentences in the Ordinance in an attempt to generate vagueness from the plain language.  As with the other allegations of vagueness, Plaintiffs have offered no proof that they or anyone else has been ticketed or towed for a mistaken belief that they were legally parked while on "City-related business."

CMC Section 10.76.040.C states that "It is unlawful for a person to park or leave standing any recreational vehicle in any City-owned parking lot at any time unless that person is conducting City-related business during business hours. The City-owned parking lots for the Police, Fire, Public Works, and City Hall buildings may only be used when actively conducting business at those specific buildings." Dkt #63-1, p. 165. Thus, there are two types of "City-related business" which would allow for RV parking in the City's lots. First, for City-owned lots not tied to a specific City building, City-related business can be any business within the City, whether that be shopping, visiting a restaurant, enjoying public facilities, or otherwise. *Id*. Second, for those lots that are tied to a specific City building, which are those for the Police, Fire, Public Works, and City Hall buildings, RV parking is only allowed for those "actively conducting business at those specific buildings." *Id*.

Again, Plaintiffs' only evidence of ambiguity comes from Plaintiffs repeated, and inadmissible, requests for lay testimony regarding the meaning of the RV Ordinance. MPSJ, p. 13. However, even this testimony, when read in context, does not contradict the proper legal construction of the Ordinance. See p. 12, supra. Nor does any of Plaintiffs' proffered evidence show that persons of ordinary intelligence ever have, or will be, confused regarding this provision.

6.    There Is No Evidence of Arbitrary or Discriminatory Enforcement

Finally, Plaintiffs have provided no evidence that the City is arbitrarily or discriminatorily enforcing the RV Ordinance. MPSJ, pp. 19-20. In fact, Plaintiffs have provided no evidence whatsoever of enforcement of the RV Ordinance against Plaintiffs or anyone else. Instead, Plaintiffs rely on inapposite case law and, once again, cobble together a series of statements taken out of context, which Plaintiffs argue indicate an "intent" for arbitrary and discriminatory enforcement. The lack of evidence alone dooms Plaintiffs argument that the City is arbitrarily or

discriminatorily enforcing the RV Ordinance.

First, the RV Ordinance does not, as Plaintiffs argue, delegate "virtually standardless discretion" to the City's Police making the Ordinance "invalid in all its applications." MPSJ, p. 19. Unlike the cases where the prohibited conduct itself was vague, offering no guidance to citizens or to the police, the "vagueness" of which Plaintiffs complain here is, at best, marginal applications of the Ordinance in hypothetical situations. See *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) (law vague because crime of being a "vagrant" is indistinguishable from citizens enjoying a lazy Sunday afternoon about town); *Morales* (ordinance vague because it was unclear what it meant to "loiter"); *Coates* (ordinance vague because it was unclear what it meant to be "annoying to persons passing by"). Here, the RV Ordinance does not suffer from any of these fundamental infirmities. It is abundantly clear that the conduct the RV Ordinance prohibits is the parking of an RV in violation of the Ordinance. If a person parks her fifth-wheel on Morris Street, an industrial area of the City, from 10:00 p.m. to 7:30 a.m., she is not in violation of the Ordinance, but if she remains parked there after 7:30 a.m., she would be in violation of the Ordinance. There is no discretion for the Police to make a different determination.  Similarly, if an RV is parked in a City-owned lot at midnight, chances are that it is not parked there on "City-related business" and the Police might use their judgment whether to investigate the situation more thoroughly, but the required standard of conduct, that RVs only be parked in City-owned lots for City-related business, does not change or involve the exercise of any discretion.

Second, the statements Plaintiffs attribute to current and former City officials and employees do not show an intent by the City to discriminatorily enforce the Ordinance against "disfavored persons."  MPSJ, pp. 19-20; see City responses, supra, p. 10.

## V.    CONCLUSION

For all of the above reasons, the Court should deny Plaintiffs' MPSJ.

DATED:  August 1, 2024                    MEYERS NAVE

By:  _____
                                          EDWARD GRUTZMACHER
                                          Attorneys for Defendant CITY OF SEBASTOPOL

<u>**PROOF OF SERVICE**</u>

***David Allen Yesue, et al. v. City of Sebastopol***
**United States District Court, Northern District, Case No. 4:22-cv-06474**

**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is 409 13th Street, Suite 600, Oakland, CA 94612.

On August 1, 2024, I served true copies of the following document(s) described as **DEFENDANT CITY OF SEBASTOPOL'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address ----------------.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 1, 2024, at Oakland, California.

_____

DEFENDANT MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## <u>SERVICE LIST</u>

2

3

*David Allen Yesue, et al. v. City of Sebastopol*
**United States District Court, Northern District, Case No. 4:22-cv-06474**

4

William S. Freeman                                        *Attorneys for Plaintiffs*
Brandon L. Greene

5

John Thomas H. Do

6

AMERICAN CIVIL LIBERTIES UNION          Telephone:     (415) 621-2493
  FOUNDATION OF NORTHERN CALIFORNIA   Facsimile:     (415) 255-8437

7

39 Drumm Street                                           Email:  wfreeman@aclunc.org;
San Francisco, CA 94111                                            bgreene@aclunc.org;

8

                                                                  jdo@aclunc.org

9

Thomas Zito                                                *Attorneys for Plaintiffs*
Sean Betouliere

10

DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor                      Telephone:     (510) 665-8644

11

Berkeley, CA 94704                                     Facsimile:     (510) 665-8511
                                                                Email:  tzito@dralegal.org;

12

                                                                        sbetouliere@dralegal.org

13

Justin O. Milligan                                          *Attorneys for Plaintiffs*

14

Sunny Noh
LEGAL AID OF SONOMA COUNTY

15

144 South E Street, Suite 100                      Telephone:     (707) 542-1290
Santa Rosa, CA 95404                                 Facsimile:     (707) 542-0177

16

                                                                Email:  jmilligan@legalaidsc.com;
                                                                        snoh@legalaidsc.com

17

18

Jeffery Hoffman                                           *Attorneys for Plaintiffs*
Alicia Roman

19

CALIFORNIA RURAL LEGAL ASSISTANCE,
INC.                                                            Telephone:     (707) 528-9941

20

1160 N. Dutton Ave, Suite 105                     Facsimile:     (707) 528-0125
Santa Rosa, CA 95401                                 Email:  jhoffman@crla.org;

21

                                                                        aroman@crla.org

22

23

24

25

26

27

28

DEFENDANT MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT