Edward Grutzmacher (SBN: 228649)
ed.grutzmacher@redwoodpubliclaw.com
REDWOOD PUBLIC LAW, LLP
409 13TH Street, Suite 600
Oakland, California 94612
Telephone: (510) 721.3210

Attorneys for Defendant CITY OF SEBASTOPOL

EXEMPT FROM FILING FEES
GOV'T CODE § 6103

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID ALLEN YESUE; MICHAEL W. DEEGAN; PAIGE ELIGHTZA CORLEY; JESSICA MARIE WETCH; and SONOMA COUNTY ACTS OF KINDNESS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEBASTOPOL,<br><br>Defendant. | Case No. 4:22-cv-06474-KAW<br><br>**DEFENDANT CITY OF SEBASTOPOL'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>The Hon. Magistrate Judge Kandis A. Westmore<br><br>Date: September 5, 2024<br>Time: 1:30 p.m.<br>Crtrm.: A<br><br>Complaint Filed: October 25, 2022<br>Trial Date: None Set |

# Contents

I.  Introduction ............................................................................................................. 4

II.  FACTS ................................................................................................................... 5

III.  Argument ............................................................................................................... 7

   A.  Plaintiffs Yesue, Wetch, and SAOK Do Not Have Standing. ........................... 7

      1.  Yesue and Wetch Do Not Have Standing. ................................................... 7

      2.  AOK Does Not Have Standing .................................................................... 9

   B.  The City Accurately Set Forth the Standard for Facial Challenges ................ 10

   C.  The Ordinance Does Not Facially Violate the Eighth Amendment Prohibition on Excessive Fines. ................................................................................................. 10

   D.  The Ordinance Does Not Facially Cause a State-Created Danger. ................ 12

   E.  The Ordinance Does Not Facially Violate the Equal Protection Clause. ....... 13

   F.  The Ordinance Does Not Facially Violate The Fourth Amendment's Prohibition on Unreasonable Seizures. ................................................................................... 13

   G.  The Ordinance Does Not Facially Violate Rights to Procedural Due Process. ...... 14

   H.  The Ordinance Is Not Facially Void for Vagueness. ...................................... 15

   I.  The Ordinance Does Not Facially Violate the Right to Travel. ...................... 15

   J.  The City Has Not Violated Plaintiffs' Rights Under the Americans with Disabilities Act and Related State Law. .............................................................................. 16

IV.  Conclusion ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964) ............................................................. 11

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ........................................ 8

*Bearden v. Georgia*, 461 U.S. 660 (1983) ............................................................................... 12

*Boyd v. City of San Rafael*, No. 23-CV-04085-EMC, 2023 WL 6960368 (N.D. Cal. Oct. 19, 2023) ........................... 14

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ..................................................................... 11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................................... 9

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) .................................................................. 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................................... 9

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) ......................................... 11

*Fitzpatrick v. City of Los Angeles*, No. CV 21-6841 JGB (SPX), 2023 WL 3318748 (C.D. Cal. Jan. 31, 2023) .......... 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............. 9

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) .................................................... 15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ......................................................... 10

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232 (9th Cir. 2009) ............ 15

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ....................................... 9

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ................................................ 8

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................................. 9

*Pennell v. City of San Jose*, 485 U.S. 1 (1988) ....................................................................... 9

*People v. Duenas*, 30 Cal.App.5th 1157 (2019) ...................................................................... 12

*Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020) .............................................. 12

*Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023) ......................................................... 13

*Timbs v. Indiana*, 586 U.S. 146 ............................................................................................... 12

*United States v. Bajakajian*, 524 U.S. 321 (1998) .................................................................. 12

*United States v. Locke*, 471 U.S. 84 (1985) ............................................................................ 15

*United States v. Salerno*, 481 U.S. 739 (1987) ....................................................................... 11

*Wang v. Reno*, 81 F.3d 808 (9th Cir. 1996) ............................................................................. 14

## I. INTRODUCTION

Plaintiffs David Allen Yesue ("Yesue"), Paige Elightza Corley ("Corley"), Jessica Marie Wetch ("Wetch") and Sonoma County Acts of Kindness' ("AOK") Opposition, Dkt. #68 ("P.Opp."), to the City of Sebastopol's ("City") Motion for Summary Judgment or Partial Summary Judgment, Dkt # 65-1 ("MSJ"), fails to demonstrate legal or factual support for any of Plaintiffs' Claims for Relief ("Claims").

First, Plaintiffs Yesue and Wetch have failed to establish standing. Plaintiffs concede that none of them have ever been ticketed or towed under the challenged Ordinance No. 1136 (the "RV Ordinance" or "Ordinance"), so Plaintiffs' standing cannot be established on the basis of direct harm. In addition, Plaintiffs Yesue and Wetch submitted new declarations reaffirming that they do not own RVs. As such, Yesue and Wetch are also not immediately in danger of sustaining some direct injury and cannot establish standing based on future harm.

AOK concedes it is not attempting to establish associational standing, only organizational standing. However, AOK has not established that the Ordinance perceptibly impaired its activities resulting in a consequent drain on AOK's resources. Instead, AOK's testimony shows that it served the exact same number of meals to the unhoused after the City's enactment of the Ordinance as it did before the City's enactment of the Ordinance and, in fact, did not decrease the number of meals served to the unhoused until more than six months after Plaintiffs filed their Complaint for Declaratory and Injunctive Relief ("Complaint.") Moreover, AOK testified that searching for the unhoused to deliver the meals AOK prepares is something AOK does on a regular basis. Thus, AOK does not have organizational standing either.

On the merits, and for the majority of Plaintiffs Claims, Plaintiffs' failure to wrestle with the fact that these Claims are all facial challenges infects Plaintiffs' arguments. In a facial challenge, the Courts' task is not to determine whether there is some hypothetical situation that Plaintiffs can conjure in which the application of the Ordinance might be unconstitutional. Rather, the Court's task is to determine whether the Ordinance is unconstitutional in all circumstances. For example, Plaintiffs argue that the Ordinance violates the Eighth Amendment prohibition on

excessive fines because the Ordinance allows for the towing of illegally parked recreational vehicles ("RVs").  However, Plaintiffs' argument requires the Court to assume that, in every application of the Ordinance, the RV owner is unhoused, the RV owner is unable to pay the fees to reclaim their RV, the City is unwilling to waive the fees to allow the RV owner to recover their RV, and the RV is consequently sold to recover impound fees.  While the application of the RV Ordinance in this hypothetical situation might be unconstitutional, Plaintiffs can provide no evidence to support that this sequence of events has ever occurred, nor that it will occur in every application of the Ordinance.  This same flaw of presenting a hypothetical situation in which the application of the Ordinance might be unconstitutional as evidence that the Ordinance is unconstitutional on its face pervades Plaintiffs' arguments.

Finally, in the few Claims for which Plaintiffs allege a direct impact, specifically those under the Americans with Disabilities Act ("ADA") and related California laws, Plaintiffs do not address the two major flaws in these Claims.  First, Plaintiffs never requested reasonable accommodations from the Ordinance, instead holding out their attorneys' demand that the City rescind the Ordinance entirely as such a request. A request to completely rescind the Ordinance is not a request for reasonable accommodations.  Second, Plaintiffs argue out of both sides of their mouths in demanding, repeatedly, that the City recognize Plaintiffs' alleged disability-related need to reside in their vehicles, while at the same time arguing that the City has no evidence that Plaintiffs' demands would fundamentally change the City's parking program into a program that allows for people to reside in their vehicles on City streets.  Because the City's acquiescence to Plaintiffs' demands would, self-evidently, involve allowing Plaintiffs to reside in their vehicles on City streets, rather than merely making reasonable use of the City's public parking, Plaintiffs requests to fundamentally modify the City's parking program are not requests for reasonable accommodations and Plaintiffs' ADA and related Claims fail.

For all these reasons, Plaintiffs' Claims have no merit and the Court should grant the MSJ.

**II.     FACTS**

Relevant undisputed material facts, as well as the City's objections to Plaintiffs' allegedly undisputed facts, are contained in the MSJ, pp. 7-10, and in the City's Opposition to the Plaintiffs'

Motion for Partial Summary Judgment, Dkt. # 72-1 ("MPSJ Opp."), pp. 7-13, and the City incorporates those facts and objections herein.

Plaintiffs' Opposition does not contest the pertinent undisputed facts set forth in the MSJ. Plaintiffs concede that none of the Plaintiffs have ever been ticketed or towed under the RV Ordinance. P.Opp., p. 4. Rather, Plaintiffs argue that these facts are irrelevant because the City has not been enforcing the Ordinance. *Id*. However, these facts are relevant to Plaintiffs' standing and to show that Plaintiffs were not directly harmed by the Ordinance.

Plaintiffs also do not dispute that neither Yesue nor Wetch have RVs. Instead, Plaintiffs submit a declaration from Yesue, in which Yesue testifies he would "consider" purchasing an RV for shelter or borrowing another temporarily should he lose his current housing in Santa Rosa, California. Dkt. #68-7, p.2. Plaintiffs also submit a declaration from Wetch in which she claims she was "offered" a truck with a camper but, despite the acknowledged lack enforcement of the Ordinance, Wetch has not accepted the offer due to her fear of losing the vehicle. Dkt. #68-6, pp. 3-4. Neither of these declarations change the fact Yesue and Wetch do not have RVs and cannot be immediately damaged by the Ordinance.

Next, Plaintiffs dispute that one of the City's purposes in enacting the Ordinance was to address daytime parking availability, claiming this purpose was a "sham" and claiming that the City did not "even attempt to support this rationale." P.Opp., p. 2. The City cited evidence supporting these issues in the MSJ at p. 8:6-9 (and evidence cited therein). Plaintiffs then go on to cite and attempt to refute some of this very same evidence on the next page of their Opposition. P.Opp., p. 3. Additionally, it is curious that Plaintiffs contest the first-hand evidence of the parking availability issues when Plaintiffs' counsel spent considerable time asking Mayor Rich about her personal observations and documentation of the RV encampment and its occupation of public parking spaces. Dkt. #65-12, pp. 192:18-215:22. In addition, the facts support that the City knew that there were parking issues caused by long-term RV encampments based on personal observations and that expert studies were not required. See MSJ, p. 8:6-9 (and evidence cited therein); MPSJ Opp., p. 11:8-12 (and evidence cited therein).

Finally, Plaintiffs argue that the City's purpose in enacting the Ordinance to address the

significant public health and safety impacts of long-term RV encampments was not based on facts. P.Opp., pp. 3-4. The personal observations of the numerous public health and safety issues are well documented in the facts cited in the City's MSJ. MSJ, pp. 7:22-8:13 (and evidence cited therein).

### III. ARGUMENT

#### A. Plaintiffs Yesue, Wetch, and SAOK Do Not Have Standing.

The City's argument that Yesue and Wetch do not have the requisite standing is based on two undisputed facts. First, these Plaintiffs have neither been ticketed nor towed under the RV Ordinance. MSJ, p. 12:15-26 (and evidence cited therein). This undisputed fact demonstrates that Yesue and Wetch have not been directly harmed by the RV Ordinance, a point which Plaintiffs do not contest. Second, Yesue and Wetch do not own RVs and, thus, do not have a realistic danger of sustaining a direct injury as a result of the ordinance's operation or enforcement. *Id.*, pp. 9:24-26, 10:1-3 (and evidence cited therein). Plaintiff AOK confirms that it is only asserting organizational standing based on its allegations that it incurred costs in responding to the Ordinance. P.Opp., pp. 7-8. However, the undisputed facts do not support this assertion. The Court should dismiss the claims of all three Plaintiffs for lack of standing.

##### 1. Yesue and Wetch Do Not Have Standing.

Plaintiffs cite a number of cases they claim support their assertion that Yesue and Wetch's lack of RVs, and therefore lack of a realistic danger of sustaining a direct injury from the ordinance, does not mean that these Plaintiffs lack standing. P.Opp., pp. 4-5. However, these cases are either inapposite, or support the City's argument that something more than a plan or a hope to, at some point in the future, obtain RVs is required to establish standing.

Plaintiffs' first case, *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) states that, to establish standing, Plaintiffs must have "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." There, plaintiffs were agricultural workers, or unions of agricultural workers, who feared prosecution on a state law regulating agricultural workers and, thus, had a realistic danger of sustaining a direct injury from a regulation that directly impacted their professions. *Id.* 292-293; see also *Monsanto Co. v.*

*Geertson Seed Farms*, 561 U.S. 139, 153 (2010) (growers owned fields that could be impacted by modified seeds); *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (landlords owned rental units that could be impacted by rent control ordinance).  Here, Yesue, Wetch, are not RV owners and could not be directly injured by the RV Ordinance.

Next, Plaintiffs cite to *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), which supports the City's claim that Plaintiffs lack standing here.  There, the Court held that "[a]bstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute" before finding that since none of the plaintiffs were presently injured by the allegedly illegal conduct, the federal courts did not have jurisdiction.  *Id*. at 494-496.  Likewise, in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) the Court rejected standing based on a "speculative chain of possibilities."  See also *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983) (plaintiff lacked standing because it was unlikely that past illegal conduct would be repeated).[1]

Here, Yesue and Wetch do not have RVs and, therefore, cannot be directly impacted by enforcement of the RV Ordinance.  Yesue and Wetch attempt to correct this deficiency by filing declarations that they might have RVs in the future, but these hopes to obtain future RVs do not show an "immediate danger of sustaining some direct injury as a result" of the RV Ordinance.  *O'Shea*, *supra*, 414 U.S. at 494; see Dkt. #68-6, #68-7.  Plaintiffs' declarations filed in support of the Opposition do not change the fact that neither owns an RV and cannot be impacted by the RV Ordinance.  Similarly, Wetch's argument that she had a "vehicle" but she sold it because she was concerned about it being towed does not provide standing to challenge the RV Ordinance.  P.Opp., p. 6.  Wetch's testimony shows that this vehicle was not an RV, but a Lincoln Town Car and not subject to the RV Ordinance. Dkt. # 65-19, p. 5; Dkt. # 65-20, pp.14:15-15:12.  Thus, because

---

[1] *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) are inapposite. Maryland dealt with the potential for inconsistent judgments between state and federal courts in a dispute between an insurance company and a person making a claim against the insured party. Plaintiffs' citation to the *Friends* case deals with mootness, not standing.  The City does not argue that Plaintiffs' Claims are moot.

neither Yesue nor Wetch have ever been ticketed or towed under the RV Ordinance, and because their lack of RV ownership means they are in no immediate danger of being injured by enforcement of the RV Ordinance, Yesue and Wetch do not have standing.

### 2. AOK Does Not Have Standing

Plaintiff AOK concedes it does not have associational standing. P.Opp., p. 7. Rather, AOK claims it has organizational standing because, AOK alleges, it was directly impacted by the RV Ordinance. AOK's own testimony, however, shows that the RV Ordinance did not cause AOK any harm.

AOK relies solely on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) for its standing. In that case, the organization was dismissed on demurrer. In overturning this dismissal, *Havens Realty Corp.*, held that the organization need only "broadly allege" that defendant's actions "perceptibly impaired" the organizations activities resulting in a "consequent drain on the organization's resources." *Id*.

Here, to defend against the City's MSJ, AOK must provide more than unsubstantiated allegations to show standing. AOK's testimony, however, shows that AOK was not impacted in the slightest by the Ordinance. First, AOK testified that it served the exact same number of meals every month in 2022, continuing through May 2023, for well over a year after the RV Ordinance was enacted. Dkt. #65-23, pp. 24:17- 26:5; 28:23-29:14. AOK further testified that this consistency was due to the fact that AOK's ability to serve the unhoused was limited by financial and volunteer constraints, not on AOK's ability to find the unhoused. *Id*. at pp. 25:12-26:5. Moreover, AOK testified that the first time AOK could not find enough unhoused individuals to distribute its meals to was in June 2023, again, well over a year after the enactment of the RV Ordinance and seven months after AOK filed the Complaint. *Id*. at p. 30:17-23. Finally, AOK testified that increasing its search area to find unhoused individuals was part of its usual practice. *Id*. at pp.30:24-33:1. Thus, AOK testified that it served the same number of meals both before and after the enactment of the RV Ordinance in 2022, did not have any troubles finding unhoused until seven months after filing the Complaint, and regularly expanded its search area to find unhoused individuals until it had distributed all its meals. Given this testimony, AOK cannot support its

DEFENDANT CITY OF SEBASTOPOL'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

1  claim that the RV Ordinance perceptibly impaired AOK activities or resulted in a drain on AOK's
2  resources. Thus, AOK does not have standing.

3        **B.    The City Accurately Set Forth the Standard for Facial Challenges**

4        Plaintiffs claim that the City "misstates the law applicable to facial challenges" but then
5  fails to show how the City actually misstated the law. P.Opp., p. 8-9. Plaintiffs concede that
6  *United States v. Salerno*, 481 U.S. 739, 745 (1987) provides that, to succeed on a facial challenge,
7  Plaintiffs must show that there are "no set of circumstances under which the Act would be valid."
8  P.Opp., p. 8.

9        Instead, Plaintiffs argue that facial challenges "are not 'disfavored,'" quoting *City of Los*
10 *Angeles v. Patel*, 576 U.S. 409, 415 (2015) (listing cases). *Patel* indeed states that facial
11 challenges "are not categorically barred or especially disfavored," which makes sense considering
12 the Court was addressing an argument that no one could ever assert a facial challenge under the
13 Fourth Amendment. *Id*. However, the City has never argued that Plaintiffs' claims are
14 categorically barred, only that Plaintiffs have not met the high standard articulated in *Salerno*.

15       Likewise, Plaintiffs' citation to *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999),
16 *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1157 (9th Cir. 2014), and *Aptheker v. Secretary*
17 *of State*, 378 U.S. 500, 514 (1964) do not show that the City's reliance on *Salerno's* standard for
18 facial challenges was incorrect. These cases show only that, on the specific facts of those cases,
19 plaintiffs had met the high bar for a facial challenge.

20       **C.    The Ordinance Does Not Facially Violate the Eighth Amendment Prohibition on Excessive Fines.**

22       In its MSJ, the City argued that the $60 fine for violation of the Ordinance is not facially
23 excessive. MSJ, pp. 13-15. Plaintiffs do not contest this argument. P.Opp., pp. 12-14. Rather,
24 Plaintiffs assert that the fact that the Ordinance allows for towing of RVs results in excessive
25 fines. *Id*. Plaintiffs' Opposition, however, ignores the standards for a facial challenge to the
26 Ordinance and instead argues that the Ordinance is unconstitutional because Plaintiffs can dream
27 up a worst-case scenario where application of the Ordinance might be unconstitutional.
28       Specifically, Plaintiffs claim that their Excessive Fines challenge is valid because the

1  Ordinance includes the "'payment in kind' of immediate towing upon first violation, which
2  deprives a vehicularly housed person of their only shelter, and inevitable towing and storage fees."
3  *Id*. p. 13.  "Imposing such fines and tows upon indigent individuals without a determination that
4  they have the present ability to pay, as the City can do under the Ordinance, facially violates due
5  process."  (*Ibid*.)

6      The Ordinance, on its face, however, does not distinguish between indigent RV owners
7  and any other kind of RV owner.  Plaintiffs have provided no evidence or argument that every
8  application of the Ordinance will be against an indigent RV owner who has no ability to pay, nor
9  that the City would, in every such circumstance, refuse to consider the RV owner's ability to pay.
10  Indeed, Plaintiffs have failed to produce any evidence that their imagined situation has ever
11  happened in the City.  Plaintiffs cannot support their facial challenge based wholly on their
12  attorneys' abilities to imagine situations where the application of the Ordnance might be
13  unconstitutional.

14      For these same reasons, Plaintiffs' cases do not support a facial challenge as they all
15  involve as-applied challenges.  See *Timbs v. Indiana*, 586 U.S. 146 (plaintiff contesting state's
16  attempt to obtain vehicle through civil in rem forfeiture action); *United States v. Bajakajian*, 524
17  U.S. 321 (1998) (requiring forfeiture of over $350,000 for defendant's failure to report currency
18  would be an excessive fine); *Bearden v. Georgia*, 461 U.S. 660 (1983) (involving revocation of
19  probation for failure to pay fines); *Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020)
20  (parking meter violators challenging parking fines and late fees levied against them); *Fitzpatrick v.
21  City of Los Angeles*, No. CV 21-6841 JGB (SPX), 2023 WL 3318748, at *34 (C.D. Cal. Jan. 31,
22  2023) (plaintiffs challenging impoundment of their vehicles); *People v. Duenas*, 30 Cal.App.5th
23  1157 (2019) (challenge to court fees charged to defendant); (truck owner challenging payment
24  plan for impoundment costs).  These as-applied cases do not support Plaintiffs' theory that they
25  can bring a facial challenge based on a hypothetical scenario.

26      On the other hand, there are multiple scenarios where application of the Ordinance would
27  not be unconstitutional.  An RV might be owned by someone with ample ability to pay; the RV
28  owner might be indigent, but the City waives fees or provides a payment plan that is within the

owners ability to pay; the RV might be in such bad shape that the owner has no objections to the City towing and disposing of it; or the City might choose not to tow at all. Because Plaintiffs cannot show that the Ordinance would result in excessive fines in every situation, Plaintiffs' facial challenge fails.

### D. The Ordinance Does Not Facially Cause a State-Created Danger.

The City's MSJ next argued that the Ordinance is not susceptible to a facial state-created danger challenge. MSJ, pp. 15-17. Plaintiffs' Opposition seeks to distance itself from the actual allegations in the Complaint, where Plaintiffs allege that the end result of the RV Ordinance is unhoused individuals contracting COVID in congregate shelters, and reframes the Claim as asserting that, in every instance of the City's enforcement of the Ordinance, the City will be possessing an unhoused RV owner's RV and forcing that person to live unsheltered on the street. Plaintiffs' revisions to its Claim do not make it viable. P.Opp., pp. 14-16.

First, Plaintiffs do not seriously address the City's argument that a state-created danger claim requires a particularized harm to an individual plaintiff. Plaintiffs cite *Sinclair v. City of Seattle*, 61 F.4th 674, 681 (9th Cir. 2023) for the assertion that a city-wide policy adopted in face of mass protests can give rise to a state-created danger, but there the 9th Circuit found that such a policy was insufficient to establish a particularized danger because it was not "directed at a specific victim." *Id*. at 682.

Next, Plaintiffs mash together allegations concerning Plaintiffs' fears of particularized harms in an attempt to prove their facial challenge. P.Opp. at pp. 15-16. Plaintiffs have not experienced any of these harms, and thus do not have an as-applied challenge. Moreover, Plaintiffs cannot use their subjective fears of harm to support a facial challenge.

Even if Plaintiffs could, however, their fears do not show a particularized harm to an individual. Again, Plaintiffs Yesue and Wetch do not have RVs, so they cannot be harmed by losing their RVs and ending up unsheltered. In addition, for all Plaintiffs, the harm of living unsheltered is too attenuated from the RV Ordinance to support Plaintiffs assertion that the RV Ordinance results in a state-created danger in all circumstances. Plaintiffs do not address the arguments in the MSJ that in order for the harm to be realized: 1) a person would need to park

their RV in violation of the Ordinance; 2) the City would need to tow the RV; 3) the RV owner would need to be unable to repossess the RV; and 4) the RV owner would have to have no other viable shelter and thus end up living unsheltered. This chain of hypothetical events is a far cry from the direct harms in cases cited by Plaintiffs. See *Boyd v. City of San Rafael*, No. 23-CV-04085-EMC, 2023 WL 6960368, at *19 (N.D. Cal. Oct. 19, 2023) (ordinance requiring certain distance between campsites itself created harms to plaintiffs); *Wang v. Reno*, 81 F.3d 808, 818-19 (9th Cir. 1996) (government's actions created danger to foreign witness brought into country). As such, these hypothetical dangers cannot support Plaintiffs' facial state-created danger claim.

### E. The Ordinance Does Not Facially Violate the Equal Protection Clause.

In support of their Fourth Claim, Plaintiffs chose to summarize their arguments in their Motion for Partial Summary Judgment ("MPSJ"). P. Opp. pp. 11-12. The City likewise incorporates by reference its arguments in the MSJ and its Opposition to the MPSJ and the arguments and facts contained therein. MSJ, pp. 17-19, MPSJ Opp., pp. 16-22.

To summarize, Plaintiffs' Equal Protection Claim is based on hearsay evidence and statements taken out of context. The RV Ordinance, on its face, does not discriminate between RVs owned by the unhoused and RVs owned by anyone else and there is no evidence that the City enacted the Ordinance for the improper purpose of punishing the unhoused.

Moreover, the City established two rational bases for restricting RV parking during the day – to ensure that parking near public facilities and local businesses was not permanently occupied by RVs and to ensure that the well-documented public health and safety impacts would not recur. These purposes are established by the facts set forth in the MSJ and MPSJ Opposition.

### F. The Ordinance Does Not Facially Violate The Fourth Amendment's Prohibition on Unreasonable Seizures.

Plaintiffs' Opposition in support of its claims that the RV Ordinance violates the prohibitions against unreasonable seizures of property contained in the Fourth Amendment and Article I, section 13 of the California Constitution again ignores that Plaintiffs' RVs have not been towed and, therefore, Plaintiffs bring a facial challenge to the Ordinance. P.Opp., pp. 16-17; Complaint, ¶¶ 77-82, 105-107.

The only argument Plaintiffs raise in opposition is that the community caretaking doctrine does not apply in a hypothetical, five-part situation of Plaintiffs' own creation. P. Opp., p. 17. Plaintiffs' ongoing theory that because Plaintiffs can imagine a situation where the application of the Ordinance is unconstitutional, the Ordinance is facially unconstitutional, turns the standard for a facial challenge on its head. Under the appropriate test, whether the Ordinance is invalid in all circumstances, Plaintiffs' Claim fails.

### G. The Ordinance Does Not Facially Violate Rights to Procedural Due Process.

Similarly, Plaintiffs support their facial challenge to the Ordinance on procedural due process grounds with arguments based on as-applied challenges. P.Opp., pp. 17-19. For example, Plaintiffs claim that *Grimm v. City of Portland*, 971 F.3d 1060, 1064 (9th Cir. 2020) "flatly rejected" the concept that publishing of the City's ordinances is sufficient to withstand a procedural due process claim. P.Opp., pp. 17-18. *Grimm* has no such holding. Rather, in *Grimm*, the court held that the city's reliance on *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1237 (9th Cir. 2009) failed to support the city's argument that publication provided sufficient individualized notice to plaintiff, whose vehicle had been towed, because *Lone Star* dealt with the validity of the ordinance, not the adequacy of individualized notice. *Grimm*, 971 F.3d at 1064. *Lone Star*, in turn, cites to *United States v. Locke*, 471 U.S. 84, 108 (1985), which held that "[i]n altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Locke's* holding that publication of the Ordinance is sufficient process for a facial challenge is more applicable here than either *Grimm* or *Lone Star*.

Plaintiffs also complain that the City has not posted enough signs to guarantee individualized notice and that the City's pattern and practice of providing warnings before towing is insufficient to guarantee individualized notice. P.Opp., pp. 18-19. For Plaintiffs' facial

1 challenge to succeed, however, Plaintiffs must show that the City never provides sufficient notice
2 for any tow under the Ordinance, not that individualized notice might be inadequate in a
3 hypothetical situation.  Plaintiffs have produced no facts to support such a showing and, as such,
4 this Claim fails.

### H. The Ordinance Is Not Facially Void for Vagueness.

Plaintiffs' arguments in favor of their vagueness challenge repeat Plaintiffs' MPSJ arguments on these same issues, including Plaintiffs' improper reliance on three grounds for vagueness that are not alleged in the Complaint.  P.Opp., pp. 9-10.  The City addressed these arguments in detail in its MSJ and MPSJ Opposition and incorporates those arguments herein. MSJ, pp. 21-24; MPSJ Opp., pp. 22-29.  In summary, Plaintiffs' vagueness claims are not based on the plain language of the Ordinance itself, which is not vague, but rather on inadmissible legal opinions regarding the meaning of the Ordinance that Plaintiffs elicited from City deponents over counsel's objections.  When examined on its own merits, the Ordinance is not impermissibly vague.  Moreover, there is no danger of discriminatory enforcement because the Ordinance does not provide the Police with discretion to determine the required standard of conduct.  For these reasons, the Court should reject Plaintiffs' Claim that the Ordinance is unconstitutionally vague.

### I. The Ordinance Does Not Facially Violate the Right to Travel.

The City's MSJ established that the Ordinance does not violate the right to travel.  MSJ, pp. 25-26.  Plaintiffs oppose the City's MSJ by arguing that the City is somehow erecting "strawman" arguments.  P.Opp, pp. 19-20.  However, the MSJ simply responds to the allegations in the Complaint.  The MSJ's statement that the Plaintiffs argue for the "right to live wherever they want, however they want" is based on a direct quote from the Complaint where Plaintiffs claim that the Ordinance violates Plaintiffs' rights to travel because it "prevents Plaintiffs from peacefully dwelling in the city of their choosing."  MSJ, pp. 25-26 (citing Complaint, ¶ 97). Similarly, the City's argument that Ordinance "prevent Plaintiffs, and others, from utilizing public parking as a de facto RV campground" states only the natural consequences of Plaintiffs' demands that they be allowed to reside in their RVs indefinitely on the City's streets.  MSJ, p. 26.

Likewise, the City's argument that the Ordinance does not seek to "expel" Plaintiffs from

the City is not the City's strawman – it is again a direct quote from the Complaint in which Plaintiffs assert that "the Ordinance was established to expel from the City those who cannot afford permanent residences in Sebastopol and who sleep in vehicles as a result." MSJ, p. 26; Complaint, ¶ 96. The fact that Plaintiffs have decided to distance themselves from this allegation now does not erase it from the Complaint.

Next, Plaintiffs seek to support its facial challenge with Plaintiffs' subjective fears. P.Opp., pp. 19-20. These fears are neither well grounded, nor do they show that the Ordinance burdens the right to travel. First, again, Yesue and Wetch do not have RVs so any travel they make into the City is not affected by the Ordinance. Even if they had RVs, however, Plaintiffs have not addressed the distinction between Plaintiffs' persons and their vehicles. The RV Ordinance does not burden Plaintiffs themselves from travelling to, from, or through the City at all. Plaintiffs are free to use any legal mode of transportation, including their RVs, to accomplish such travel. The only thing the RV Ordinance prohibits is the parking of RVs in certain areas during certain times of the day. Indeed, in the evidence Plaintiffs cite from the one Plaintiff with an RV, Corely states that "Because I am not allowed to park my RECREATIONAL VEHICLE anywhere in the CITY during the day, I cannot go into to Sebastopol with my RECREATIONAL VEHICLE during the day." P.Opp, p. 19 (citing Dkt. #65-21). Notably, this does not say that *Corley* cannot go into the City during the day, only her belief that she cannot go into the City *with her RV* during the day. While this is incorrect—Corely can travel into the City with her RV during the day—it also shows that Plaintiffs' Claim is based on Plaintiffs' conflation of themselves with their RVs. The right to travel, however, protects people, not vehicles.

Finally, Plaintiffs argue that the Ordinance is facially discriminatory because it was designed with discriminatory intent. P.Opp., p. 20. Aside from the fact that this argument misunderstands that "facially" means on the face of the Ordinance itself, as the City demonstrated in both the MSJ and its Opposition to the MPSJ, the City did not enact the Ordinance with any discriminatory intent. See MSJ, pp. 17-19, 25; MPSJ Opp., pp. 16-22.

    **J.**  **The City Has Not Violated Plaintiffs' Rights Under the Americans with Disabilities Act and Related State Law.**

1  Lastly, Plaintiffs fail to adequately address the two main flaws the City identified in its MSJ with Plaintiffs' Claims under federal and state disability laws. MSJ, pp. 26-28; P.Opp. pp. 20-24. First, Plaintiffs never made a "request for accommodation" and the one piece of evidence they cite is a letter demanding only that the City rescind the ordinance, not provide reasonable accommodations. P.Opp., p. 23 (citing Dkt. #65-6). Second, Plaintiffs accurately characterize the City's "program" as public parking on the City streets, but then take issue with the fact that their Complaint asks the City to recognize Plaintiffs' "disability-related need to reside" in their RVs. P.Opp., pp. 22-23. 24. A program for public parking, however, is fundamentally different than a program allowing for residing on City streets. As such, even if Plaintiffs had actually requested such an accommodation, the City would not have been required to convert its public parking program to a program allowing people to reside on City streets.

Plaintiffs first assert that they made a request for reasonable accommodations in their lawyers' letter, dated August 26, 2022 and that "[m]odifications to enforcement" can represent a reasonable accommodation. P.Opp, p. 23-24, citing Dkt. #65-6. The City does not dispute that a request for modification to enforcement can constitute a reasonable accommodation, but the August 26, 2022 letter never makes such a request. The eight-page letter consists almost entirely of legal arguments about why the Ordinance is invalid under a host of constitutional and statutory provisions. Dkt. 65-6. The letter, however, only contains two statements that could charitably be characterized as "requests." First, on page 1, the letter urges the City "to promptly rescind the Ordinance, and inform you that if you do not, we are prepared to initiate litigation to obtain a court order invalidating the Ordinance." *Id.*, p. 1. Then, on page 8, the letter "urge[s] the City Council to protect the rights and dignity of its unhoused population by promptly repealing the Ordinance." *Id.*, p. 8. Both of these statements ask the City to rescind or repeal the Ordinance; they do not ask that the City modify the application of the Ordinance to Plaintiffs.

Plaintiffs' final argument, that the City has not provided any proof that the modifications Plaintiffs seek would transform a public parking program into a residing-on-City-streets program defies both reason and belief. Plaintiffs have been steadfast in their assertion that they have a disability-related need to reside in their vehicles. Complaint, ¶¶ 12 ("Mr. Yesue has a disability-

related need to live in his RV rather than on the streets of Sebastopol or in congregate shelter"), 14 ("Ms. Corley has a disability-related need to live in his [sic] RV rather than on the streets of Sebastopol, or in a congregate shelter"), 48 ("each of the individual Plaintiffs has a disability-related need to remain in or return to their vehicles"), 52 ("Plaintiffs all have a disability-related need to be in a HHV").  In fact, just two pages prior to this argument *in the same brief*, Plaintiffs argue that they "have a disability-related need to reside in vehicles … rather than living unsheltered on the street or in crowded congregate settings" and that "[b]y completely banning daytime parking of the vehicles that Plaintiffs require by reason of their disabilities, the City imposes an undue burden on people with a disability-related need for vehicular shelter."  Compare P.Opp. p. 22 with *id.*, p. 24.  Despite Plaintiffs' multiple assertions of the relief they demand, Plaintiffs somehow argue that the City has no proof that what Plaintiffs seek is a fundamental alteration of the City's public parking program into a program that allows Plaintiffs to reside in their RVs on City streets.  P.Opp., p. 24.  Plaintiffs cannot reasonably argue both that they have a disability-related need to reside in their RVs and that the City cannot support the fact that Plaintiffs' requested accommodations would require the City to allow Plaintiffs to reside on City streets when the City has no such program.

Thus, because Plaintiffs have failed to produce evidence that they made a request for a reasonable accommodation from the Ordinance, instead of simply a demand to rescind the Ordinance, and because Plaintiffs themselves have argued, repeatedly, that the City must fundamentally alter its public parking program to accommodate Plaintiffs alleged disability-related need to reside in their vehicles, the Court should grant the City's MSJ to Plaintiffs' claims under the ADA and related California laws.

### IV. CONCLUSION

For all of the above reasons, the Court should grant the City's MSJ in full.

DATED:  August 15, 2024          MEYERS NAVE

By: _____
EDWARD GRUTZMACHER
Attorneys for Defendant CITY OF SEBASTOPOL

# PROOF OF SERVICE

***David Allen Yesue, et al. v. City of Sebastopol***
**United States District Court, Northern District, Case No. 4:22-cv-06474**

**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is 409 13th Street, Suite 600, Oakland, CA 94612.

On August 15, 2024, I served true copies of the following document(s) described as **DEFENDANT CITY OF SEBASTOPOL'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address joachim.peats@redwoodpublic.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 15, 2024, at Oakland, California.

/s Joachim Peats

Case No. 4:22-cv-06474-KAW
DEFENDANT CITY OF SEBASTOPOL'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT

# SERVICE LIST

*David Allen Yesue, et al. v. City of Sebastopol*
United States District Court, Northern District, Case No. 4:22-cv-06474

| | |
|---|---|
| William S. Freeman<br>Brandon L. Greene<br>John Thomas H. Do<br>AMERICAN CIVIL LIBERTIES UNION<br>  FOUNDATION OF NORTHERN CALIFORNIA<br>39 Drumm Street<br>San Francisco, CA 94111 | *Attorneys for Plaintiffs*<br><br>Telephone:    (415) 621-2493<br>Facsimile:     (415) 255-8437<br>Email:  wfreeman@aclunc.org;<br>            bgreene@aclunc.org;<br>            jdo@aclunc.org |
| Thomas Zito<br>Sean Betouliere<br>DISABILITY RIGHTS ADVOCATES<br>2001 Center Street, 4th Floor<br>Berkeley, CA 94704 | *Attorneys for Plaintiffs*<br><br>Telephone:    (510) 665-8644<br>Facsimile:     (510) 665-8511<br>Email:  tzito@dralegal.org;<br>            sbetouliere@dralegal.org |
| Justin O. Milligan<br>Sunny Noh<br>LEGAL AID OF SONOMA COUNTY<br>144 South E Street, Suite 100<br>Santa Rosa, CA 95404 | *Attorneys for Plaintiffs*<br><br>Telephone:    (707) 542-1290<br>Facsimile:     (707) 542-0177<br>Email:  jmilligan@legalaidsc.com;<br>            snoh@legalaidsc.com |
| Jeffery Hoffman<br>Alicia Roman<br>CALIFORNIA RURAL LEGAL ASSISTANCE, INC.<br>1160 N. Dutton Ave, Suite 105<br>Santa Rosa, CA 95401 | *Attorneys for Plaintiffs*<br><br>Telephone:    (707) 528-9941<br>Facsimile:     (707) 528-0125<br>Email:  jhoffman@crla.org;<br>            aroman@crla.org |