1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

DAVID ALLEN YESUE, et al.,

Case No.  22-cv-06474-KAW

8

Plaintiffs,

9

v.

10

CITY OF SEBASTOPOL,

11

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. Nos. 62, 65

12
13

On October 25, 2022, Plaintiffs David Allen Yesue, Paige Elightza Corley, Jessica Marie

14

Wetch, and Sonoma County Acts of Kindness ("AoK") filed the instant action challenging

15

Defendant City of Sebastopol's enactment of Ordinance No. 1136 (the "RV Ordinance") as

16

unconstitutional.  (Compl., Dkt. No. 1.)  Pending before the Court is Plaintiffs' motion for partial

17

summary judgment and Defendant's motion for summary judgment.  (Pls.' Mot. for Summ. J.,

18

Dkt. No. 62; Def.'s Mot. for Summ. J., Dkt. No. 65.)

19

Having considered the parties' filings, the relevant legal authorities, and the arguments

20

made at the September 5, 2024 hearing, the Court GRANTS Defendant's motion for summary

21

judgment and DENIES Plaintiffs' motion for partial summary judgment.

22

**I.    BACKGROUND**

23

Like many cities, Defendant has experienced a dramatic rise in the homeless population.

24

(Compl. ¶ 1.)  Beginning around 2018, unhoused individuals living in Residential Vehicles

25

("RVs") began to increase in Morris Street and the surrounding residential area, resulting in

26

complaints from the community.  (7/11/24 Grutzmacher Decl., Exh. 5 ("Rich Dep.") at

27

COS0029364; 7/11/24 Grijalva Decl., Exh. 1 ("McLaughlin Dep.") at 93:1-20; Exh. 6 ("Kilgore

28

Dep.") at 16:5-11.)  For example, there were complaints about RVs using nearly all of the parking

United States District Court
Northern District of California

spaces on Morris Street, as well as concerns and complaints about human waste on the sidewalks and in the street, leaking sewage, accumulation of trash and possessions around the vehicles, drug use, a vehicle catching fire and burning, the use of gas generators, a RV occupant passing away in his vehicle, and confrontations between citizens and RV occupants. (McLaughlin Dep. at 22:25-23:10, 26:7-23, 90:9-91:3, 91:18-92:2; Rich Dep. at 143:2-13, 153:23-154:7, 156:12-20; Kilgore Dep. at 27:8-14, 29:12-15; 7/11/24 Grutzmacher Decl., Exh. 8 ("Nelson Dep.") at 19:12-15, Exh. 20 at 38; Wetch Decl. ¶ 4, Dkt. No. 68-6 ("While I was on Morris Street, my trailer was burned down[.]").) The police chief estimated that 20-30% of calls were related to unhoused individuals, including by local merchants concerned about the effect of the RV presence on their businesses, although no direct link between the RV dwellers and crime was established. (Nelson Dep. at 19:23-24, 41:4-7, 47:4-23, 54:13-22; 7/11/24 Grijalva Decl., Exh. 14 at COS0011347.) City officials were aware of the complaints towards unhoused individuals. (Rich Dep. at 53:25-54:20, 243:3-8, Nelson Dep. at 62:3-13.)

On February 23, 2022, Ordinance No. 1136 (the "RV Ordinance") was passed, and is codified at Sebastopol Municipal Code ("SMC") Chapter 10.76. (7/11/24 Grutzmacher Decl., Exh. 17.) The RV Ordinance states that it is "intended to ensure there is adequate parking for residents of the city and to regulate the parking of vehicles actively used as sleeping accommodations." (SMC § 10.76.020.) Thus, the RV Ordinance: (1) prohibits parking an RV on public streets zoned as residential, (2) prohibits parking an RV on public streets zoned as commercial, industrial, or community facility between 7:30 a.m. and 10:00 p.m., (3) prohibits parking an RV on any park, square, or alley, and (4) prohibits parking an RV in a city-owned parking lot unless the person is conducting city-related business during business hours at the location for which the parking lot is designated. (SMC § 10.76.040.)

On October 25, 2022, Plaintiffs filed the instant action, asserting claims for: (1) cruel and unusual punishment in violation of the Eighth Amendment, (2) excessive fines in violation of the Eighth and Fourteenth Amendments, (3) state created danger in violation of the Fourteenth Amendment, (4) equal protection in violation of the Fourteenth Amendment, (5) unreasonable seizure of property in violation of the Fourth Amendment, (6) procedural due process under the

United States District Court
Northern District of California

2

1  Fourteenth Amendment, (7) void for vagueness under the Fifth and Fourteenth Amendments, (8)

2  right of free movement under the Fourteenth Amendment, (9) right of intrastate travel under the

3  California Constitution, (10) excessive fees and fines under the California Constitution, (11)

4  unlawful seizure of property by towing under the California Constitution and California Vehicle

5  Code § 22650(b), (12) violation of the Americans with Disabilities Act ("ADA"), (13) violation of

6  the California Disabled Persons Act, and (14) discriminatory program under California

7  Government Code § 11135.[1]  (Compl. at 18-31.)  During the pendency of this lawsuit, the parties

8  agreed to temporarily stay enforcement of the RV Ordinance.  (*See* Dkt. No. 55 at 9-10.)

9          On July 11, 2024, Plaintiffs and Defendant both filed motions for summary judgment.[2]  On

10  August 1, 2024, Plaintiffs filed their opposition.  (Pl.'s Opp'n, Dkt. No. 68.)  On August 9, 2024,

11  pursuant to the parties' stipulation, Defendant filed its corrected opposition.  (Def.'s Opp'n, Dkt.

12  No. 72-1.)  On August 15, 2024, Plaintiffs and Defendant filed their respective replies.  (Def.'s

13  Reply, Dkt. No. 73; Pl.'s Reply, Dkt. No. 74.)

14                          **II.    LEGAL STANDARD**

15          A party may move for summary judgment on a "claim or defense" or "part of... a claim or

16  defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

17  discovery, there is no genuine issue as to material facts and the moving party is entitled to

18  judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

19

20  [1] On April 12, 2024, the parties stipulated to the dismissal of Plaintiff Michael W. Deegan.  (Dkt.
    No. 56.)  On July 16, 2024, the parties stipulated to the dismissal of Plaintiff's claim for cruel and
21  unusual punishment.  (Dkt. No. 66.)

22  [2] In support of their motion for summary judgment, Defendant provided nearly 2,000 pages of
    exhibits, the vast majority of which is comprised of entire deposition transcripts.  Such
23  submissions are highly inappropriate; Defendant's submissions should have been limited to the
    specific testimony at issue.  The Court will not waste its limited judicial resources to review
24  thousands of pages of deposition transcript, and instead limits its review to the specific pages cited
    in the briefs.
25
    Plaintiffs, in turn, include numerous footnotes in their briefs, many of which appear to contain
26  substantive arguments and legal citations.  (*See* Pls.' Mot. (9 footnotes); Pls.' Opp'n (18
    footnotes); Pls.' Reply (11 footnotes).)  This appears to be an improper attempt to avoid the page
27  limits.  It is inappropriate to put substantive arguments in footnotes, and the Court will not
    consider such arguments.  *See Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962
28  n.8 (9th Cir. 2014) ("Arguments raised only in footnotes . . . are generally deemed waived.").

United States District Court
Northern District of California

1    Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*

2    477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

3    evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

4         A party seeking summary judgment bears the initial burden of informing the court of the

5    basis for its motion, and of identifying those portions of the pleadings and discovery responses

6    that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where

7    the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

8    reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City*

9    *of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

10        On an issue where the nonmoving party will bear the burden of proof at trial, the moving

11   party may discharge its burden of production by either (1) "produc[ing] evidence negating an

12   essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the

13   nonmoving party does not have enough evidence of an essential element of its claim or defense to

14   discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz*

15   *Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

16        Once the moving party meets its initial burden, the opposing party must then set forth

17   specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See*

18   Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not

19   simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S.

20   at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own evidence set

21   forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*,

22   247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must

23   produce "specific evidence, through affidavits or admissible discovery material, to show that the

24   dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Conclusory or

25   speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of

26   material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics*

27   *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

28        In deciding a motion for summary judgment, a court must view the evidence in the light

4

1    most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,*

2    477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

3                           **III.    DISCUSSION**

4        **A.    Standing**

5        As an initial matter, Defendant asserts that Plaintiffs Yesue, Wetch, and AoK lack

6    standing.[3]  (Defs.' Mot. for Summ. J. at 11; Defs.' Opp'n at 14.)  Article III standing requires the

7    demonstration of three elements: (1) the plaintiff suffered an "injury in fact" that is concrete and

8    particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

9    traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

10    speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of*

11    *Wildlife*, 504 U.S. 555, 560-61 (1992).

12        First, Defendant argues that Plaintiffs Yesue and Wetch have not been injured by the RV

13    Ordinance, and that they have only a speculative fear of future injury.  There is no dispute that

14    Plaintiffs Yesue and Wetch were never cited or towed pursuant to the RV Ordinance.  Rather, the

15    parties dispute whether Plaintiffs Yesue and Wetch are at a sufficiently imminent and substantial

16    risk of future enforcement because neither currently own a vehicle that would be subject to the RV

17    Ordinance.  (*See* Def.'s MSJ at 12; Pls.' Opp'n at 6.)

18        The Court finds that Plaintiff Wetch has standing, but that Plaintiff Yesue lacks standing.

19    Plaintiff Wetch states that she is currently unhoused and has been "couch surfing" since February

20    2024.  (Wetch Decl. ¶ 2.)  Plaintiff Wetch, however, explains that she has access to a truck with a

21    camper, and that she would like to transfer it to her name except that she is afraid she will lose it

22    due to the RV Ordinance.  (Wetch Decl. ¶ 10.)  Plaintiff Wetch further explains that she would

23    want to be in Sebastopol because that is where her mother and friends are.  (Wetch Decl. ¶11.)

24    Plaintiff Wetch also states that she would be afraid of parking in Sebastopol, and that she would

25    be unable to afford driving out of town and then back each night because of her limited income

26    and high gas prices.  (Wetch Decl. ¶ 10.)  In other words, Plaintiff Wetch's injury due to the RV

27

28    _____
     [3] Defendant does not assert that Plaintiff Corley lacks standing.

United States District Court
Northern District of California

1    Ordinance is not speculative or hypothetical; while she does not currently have a RV, she would

2    have one if not for the RV Ordinance's prohibitions on parking.  Plaintiff Wetch further articulates

3    why she would need to park in Sebastopol and how the RV Ordinance prevents her from doing so.

4        Plaintiff Yesue, in turn, states that he is currently in at-will housing, and that his living

5    situation is "precarious."  (Yesue Decl. ¶ 2, Dkt. No. 68-7.)  He is also working on finding a more

6    permanent housing solution with his case worker.  (Yesue Decl. ¶ 3.)  Plaintiff Yesue states that if

7    he loses his current housing and does not have permanent housing, he will need to live in a

8    vehicle.  (Yesue Decl. ¶ 7.)  Plaintiff Yesue asserts that he would use his sedan as his home, and

9    that he would "consider purchasing an RV."  (Yesue Decl. ¶ 4.)  While Plaintiff Yesue also states

10   that he has access to an RV owned by another individual, he does not express any intent or interest

11   in using that RV.  Thus, unlike Plaintiff Wetch, Plaintiff Yesue's asserted injury is too attenuated

12   to support standing.  Specifically, *if* Plaintiff Yesue loses his current housing, and *if* Plaintiff

13   Yesue does not have permanent housing at that time, then Plaintiff Yesue *may* purchase an RV,

14   which he would need to be able to park in Sebastopol.  This, however, requires a series of

15   hypotheticals that may or may not happen, such that "[t]here is at most a 'perhaps' or 'maybe'

16   chance" that the RV Ordinance will be enforced against him, "and that is not enough to give [him]

17   standing to challenge its enforceability."  *Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1340

18   (11th Cir. 2000); *Lee v. Am. Express Travel Related Servs.*, 348 Fed. Appx. 205, 207 (9th Cir.

19   2009) ("this argument requires a series of assumptions about what *might* happen if plaintiffs

20   actually did initiate arbitration, and such speculation is too conjectural and hypothetical to support

21   current Article III standing").

22       Second, Defendant argues that Plaintiff AoK lacks standing because it was not harmed by

23   the RV Ordinance.  The Supreme Court has found that an organization has standing where the

24   challenged practice has perceptibly impaired the organization's ability to provide services; "[s]uch

25   concrete and demonstrable injury to the organization's activities -- with the consequent drain on

26   the organization's resources -- constitute far more than simply a setback to the organization's

27   abstract social interests."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

28       The parties dispute whether the RV Ordinance has frustrated Plaintiff AoK's mission.

United States District Court
Northern District of California

1   Plaintiff AoK is a non-profit organization whose volunteers serve individuals experiencing

2   homelessness, providing supplies such as meals, clothing, tents, and sleeping bags.  (Compl. ¶ 16.)

3   Plaintiff AoK asserted in its interrogatory responses that because "vehicularly housed persons

4   have been forced by the Ordinance to move constantly, [Plaintiff AoK] has found it increasingly

5   difficult to locate people to get them meals, increasing the time spent looking for them and thereby

6   reducing the number of people who can be served."  (8/1/24 Grijalva Decl., Exh. 2 ("AoK

7   Interrogatory Resp.") at 11.)  Plaintiff AoK further states that the time "spent trying to locate and

8   serve people who have been dispersed as a result of the Ordinance could have been spent making

9   and serving additional meals, in furtherance of Plaintiff [AoK's] core mission and purpose."  (*Id.*)

10          Defendant argues that contrary to this interrogatory response, Plaintiff AoK testified it had

11   no problem locating unhoused individuals.  (Def.'s Mot. for Summ. J. at 13.)  The testimony cited

12   by Defendant does not support this assertion; Plaintiff AoK's representative stated that the amount

13   of time spent finding individuals varied because "[i]f they have moved locations, if they have

14   moved further away, the number of locations that we have to go to in order to find individuals."

15   (7/11/24 Grutzmacher Decl., Exh. 16 ("Jackson Dep.") at 14:25-15:2.)  Further, when asked if it

16   "happen[ed] frequently that individuals move to different locations and you have trouble finding

17   them," Plaintiff AoK's representative answered in the affirmative.  (Jackson Dep. at 15:3-6.)  This

18   deposition testimony supports Plaintiff AoK's assertion that when the individuals it served moved

19   around, Plaintiff AoK would have more trouble locating them.

20          Defendant also contends that searching for unhoused individuals is part of Plaintiff AoK's

21   standard operations, and that Plaintiff AoK served the same number of meals even after the RV

22   Ordinance was enacted.  (Def.'s Reply at 9.)  Even if true, however, this does not mean that

23   Plaintiff AoK did not have to spend *more* time or resources to serve the same number of meals as

24   prior to the RV Ordinance.  Indeed, Plaintiff AoK's representative explained that they would

25   sometimes give people duplicate meals because they could not find as many individuals to provide

26   meals to.  (Jackson Dep. at 28:21-29:16.)  Defendant likewise suggests that Plaintiff AoK's

27   representative testified that its ability to serve the unhoused was limited by financial and volunteer

28   constraints, not on its ability to find the unhoused, when Plaintiff AoK's representative made clear

United States District Court
Northern District of California

1    that its inability to find the unhoused did impact its distribution of meals.  (Jackson Dep. at 28:21-

2    24 ("Part of [the drop in the number of meals from May to June of 2023] was the scaling back due

3    to not being able to find the individuals on the streets").)  The Court finds that Plaintiff AoK has

4    standing, as the RV Ordinance allegedly affected Plaintiff AoK's ability to find unhoused

5    individuals to distribute meals to, draining its resources.

6        **B.    Facial Challenge**

7        The parties do not dispute that Plaintiffs bring a facial challenge to the RV Ordinance.  The

8    parties do, however, dispute the standard for a facial challenge.

9        "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount

10   successfully, since the challenger must establish that no set of circumstances exists under which

11   the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Thus, "[t]he fact

12   that [a legislative act] might operate unconstitutionally under some conceivable set of

13   circumstances is insufficient to render it wholly invalid, since we have not recognized an

14   'overbreadth' doctrine outside the limited context of the First Amendment."  *Id.*

15       Plaintiffs dispute that it must show that there is "no set of circumstances under which the

16   Act would be valid."  (Pl.'s Opp'n at 8.)  Rather, Plaintiff argues that this standard was rejected in

17   *City of Los Angeles v. Patel*, 576 U.S. 409 (2015).  (*Id.*)  To the contrary, the Supreme Court

18   upheld this standard, explaining that "[u]nder the most exacting standard the Court has prescribed

19   for facial challenges, a plaintiff must establish that a law is unconstitutional in all of its

20   applications.'"  *Id.* at 418.  The Supreme Court clarified, however, that "when assessing whether a

21   statute meets this standard, the Court has considered only applications of the statute in which it

22   actually authorizes or prohibits conduct."  *Id.*  In *Patel*, the Supreme Court considered a statute

23   authorizing warrantless searches.  The city argued that there were circumstances where the statute

24   would not be unconstitutional, including where the police are responding to an emergency, where

25   there is consent to a search, and where the police have a warrant.  *Id.* at 417-18.  The Supreme

26   Court rejected this argument because "the proper focus of the constitutional inquiry is searches

27   that the law actually authorizes, not those for which it is irrelevant."  *Id.* at 418.  Specifically, the

28   statute was not necessary where there was an emergency, consent, or a warrant.  Thus, "the

United States District Court
Northern District of California

constitutional 'applications' that [the city] claims prevent facial relief here are irrelevant to our analysis because they do not involve actual applications of the statute." *Id.* at 419.

In short, Defendant cannot rely on a set of circumstances where the RV Ordinance is inapplicable (and therefore irrelevant). To succeed on a facial challenge, however, Plaintiffs must still demonstrate that there is no set of circumstances in which the RV Ordinance **applies** that would be valid. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024) ("A party succeeds in a facial challenge only by establishing that the law is unconstitutional in all of its applications and fails where the statute has a plainly legitimate sweep.").

> i. **Claims 2 and 10: Excessive Fines in Violation of Eighth Amendment and California Constitution**

Defendant moves for summary judgment as to Plaintiff's excessive fines claims. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Timbs v. Indiana*, 586 U.S. 146, 151 (2019) (internal quotation omitted). "[A] fine is unconstitutionally excessive under the Eighth Amendment if its amount 'is grossly disproportionate to the gravity of the defendant's offense.'" *Pimentel v. City of L.A.*, 974 F.3d 917, 921 (9th Cir. 2020) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)). Courts consider four factors to determine whether a fine is grossly disproportionate to the offense: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.* Here, the RV Ordinance provides: "all violations of this chapter shall be an infraction and such persons shall be subject to citation, towing or both." (SMC § 10.76.080.) The fine for a violation of the RV Ordinance is $60.00, and fines associated with the RV Ordinance "do not increase upon subsequent additional citations or offenses." (7/11/24 Grutzmacher Decl., Exh. 20 at 30.)

First, "Courts typically look to the violator's culpability to assess this factor." *Pimentel*, 974 F.3d at 922. "[I]f culpability is high or behavior reckless, the nature and extent of the underlying violation is more significant. Conversely, if culpability is low, the nature and extent of the violation is minimal." *Id.* at 923. In *Pimentel*, the Ninth Circuit found that the plaintiffs were

culpable because they violated the Municipal Code by failing to pay for over-time use of a metered space, but that the culpability was low because the underlying parking violation was minor. Thus, the violations were "minimal but not de minimis." *Id.* Here, as in *Pimentel*, an individual would be culpable if they violated the RV Ordinance by parking where and/or when not permitted. That said, there is no dispute that culpability would be minimal. (*See* Def.'s Mot. for Summ. J. at 15; Pls.' Opp'n at 13; *see also Stewart v. City of Carlsbad*, No. 23cv266-LL-MSB, 2024 U.S. Dist. LEXIS 54303, at *6 (S.D. Cal. Mar. 26, 2024) (finding that a violation of a municipal code prohibiting parking of oversized vehicles was "minimal but not de minimis").

Second, courts consider "whether the underlying offense relates to other illegal activities." *Pimentel*, 974 F.3d at 923. Defendant contends that parking violations under the RV Ordinance could "be associated with other legal violations including, but not limited to violations of the 72-hour Ordinance, vehicles with expired registration, and/or vehicles in inoperative or dangerous conditions." (Def.'s Mot. for Summ. J. at 15.) As Plaintiffs correctly point out, however, Defendant cites no evidence in support. In any case, courts have found that "[t]his factor is not as helpful to our inquiry as it might be in criminal contexts." *Pimentel*, 974 F.3d at 923.

Third, courts consider "whether other penalties may be imposed for the offense." *Pimentel*, 974 F.3d at 923. The parties agree there is nothing in the record to suggest that other penalties may be imposed for the offense. (Def.'s Mot. for Summ. J. at 15; Pls.' Opp'n at 14.)

Finally, courts consider "the extent of the harm caused by the violation." *Pimentel*, 974 F.3d at 923. This factor "is not limited to monetary harms alone. Courts may also consider how the violation erodes the government's purposes for proscribing the conduct." *Id.* Defendant contends that it "has an interest in preventing the human health and safety impacts of long-term RV encampments on the city street and in ensuring adequate parking and access to public facilities and local businesses." (Def.'s Mot. for Summ. J. at 15.) Plaintiffs, in turn, argue that "the act of parking a single disfavored vehicle during daytime in a space that is available to all other vehicles [] does not remotely give rise to the types of hypothetical harms conjured up by the City." (Pl.'s Opp'n at 14.)

The Court finds there is evidence in the record that the RV Ordinance was enacted in

10

response to parking concerns.  Mayor Diana Rich testified that Defendant "received a lot of reports of concerns about availability of parking for other purposes, and that would have been involving the Morris Street situation where there were lived-in vehicles who were occupying most of these sides of the street and then into a couple of side streets."  (Rich Dep. at 36:19-24.)  Mayor Rich also noted that "[i]t was clear for everyone on the city council and anyone who happened to travel down Morris that there was a need to increase access to the shared spaces in that area." (Rich Dep. at 37:20-22.)  Likewise, the "police routinely were on Morris Street and could observe the lack of parking."  (McLaughlin Dep. at 56:23-24.)  Plaintiffs argue that these are hearsay complaints; even if not considering the complaints for their truth, however, the Court can consider the complaints for their effect on the listener, including why the City Council believed the RV Ordinance was needed.  (Pl.'s Opp'n at 3.)  In any case, Defendant also points to the personal observations of its staff and City Council members.  In the alternative, Plaintiffs contend that Defendant did not conduct a formal study analyzing parking availability, but cites no legal authority that such a study would be required.  (*Id.*)  Finally, to the extent Plaintiffs argue that there was evidence that there was no parking shortage, Plaintiffs rely on a September 2018 report. (*See* Pl.'s Mot. for Summ. J. at 8.)  It is unclear how a September 2018 report contradicts reports of inadequate parking in 2021-2022.

The Court also finds there is evidence in the record that the RV Ordinance was enacted in response to health and safety concerns.  City officials reported received complaints about "blockage on the sidewalks, human waste on the sidewalks and in the street, trash accumulations, blockage of sidewalks, confrontations that sometimes occurred between citizens and occupants of the recreational vehicles," as well as "overflowing garbage[, ] the use of . . . generators, which created serious risk[, and] the piles of personal possessions that are around the vehicles." (McLaughlin Dep. at 23:4-10; Rich Dep. at 154:1-5.)  Former City Manager/City Attorney Lawrence McLaughlin also testified that he personally observed conditions including some of the RVs being in poor repair without operational sanitary facilities, as well as instances of drug use, the accumulation of possessions onto the sidewalk, and that the fire chief noted flammable materials located around a number of RVs.  (McLaughlin Dep. at 90:9-91:4, 92:9-12.)  Plaintiffs

1    argue there is no evidence of these events, but the deposition testimony includes both complaints

2    and personal observations.[4]  (Pl.'s Opp'n at 3.)  Plaintiff also argues there was no evidence

3    relating unhoused individuals with crime, but public safety concerns are not limited to crimes.  (*Id.*

4    at 4.)

5    Thus, the Court finds that as to the fourth factor, Defendant is harmed because the RVs

6    were taking up parking and causing public health and safety concerns.  Moreover, "[w]ithout

7    material evidence provided by appellants to the contrary, we must afford 'substantial deference to

8    the broad authority that legislatures necessarily possess in determining the types and limits of

9    punishments.'"  *Pimentel*, 974 F.3d at 924 (quoting *Bajakajian*, 524 U.S. at 336).

10    Considering the four factors, the Court concludes that the factors weigh in favor of finding

11    that Defendant's parking fine of $60 per occurrence is not grossly disproportionate to the

12    underlying offense of parking an RV where and when prohibited.  *Compare with Stewart*, 2024

13    U.S. Dist. LEXIS 54303, at *7-8 ($50 parking fine for parking oversized vehicles where and when

14    prohibited was not a violation of the Eighth Amendment).  Thus, the parking fine does not violate

15    the Eighth Amendment.

16    The Court notes Plaintiffs' argument that the fine may not be limited to $60 because a

17    vehicle could be towed upon the first violation, which would subject a vehicularly housed person

18    to towing and storage fees, as well as the deprivation of their shelter.  (Pls.' Opp'n at 13.)

19    Plaintiffs also argue that $60 fines could pile up.  (*Id.*)  Even if these scenarios are possible,

20    however, Plaintiffs have not demonstrated that there is *no* constitutional application of the RV

21    Ordinance.  Plaintiffs' facial challenge cannot be premised "on supposition of a worst case

22    scenario that may never occur."  *Planned Parenthood v. Lawall*, 193 F.3d 1042, 1046 (9th Cir.

23    1999).  Rather, as Defendant points out, the RV Ordinance could be applied as to a RV owned by

24    someone with ample ability to pay.  (Def.'s Reply at 11.)

25    Accordingly, the Court GRANTS Defendants' motion for summary judgment as to

26

27    ───────────────

28    [4] Plaintiffs also assert there is no direct evidence of, for example, an RV catching on fire.  The
Court notes, however, that Plaintiff Wetch herself stated in her declaration that her trailer burned
down while she was on Morris Street.  (Wetch Decl. ¶ 4.)

United States District Court
Northern District of California

1    Plaintiffs' second and tenth claims.

2        ii.    **Claim 3: State Created Danger**

3        Defendant moves for summary judgment as to Plaintiffs' state created danger claim.  "[T]o

4    make out a successful claim under the state created danger doctrine, a plaintiff must allege facts

5    sufficient to establish that the defendant acted with deliberate indifference to a known or obvious

6    danger."  *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023) (internal quotation omitted).

7    In other words, "a state actor needs to know that something is going to happen but ignore the risk

8    and expose the plaintiff to it."  *Id.* at 681 (internal quotation omitted).  "To succeed on a state-

9    created danger claim, a plaintiff must establish that (1) a state actor's affirmative actions created or

10   exposed him to an actual, particularized danger that he would not otherwise have faced, (2) that

11   the injury he suffered was foreseeable, and (3) that the state actor was deliberately indifferent to

12   the known danger."  *Id.* at 680 (internal quotation omitted).

13       Defendant argues that Plaintiffs' asserted harms are not sufficiently known or

14   particularized.  (Def.'s Mot. for Summ. J. at 16.)  "A danger is 'particularized' if it is directed at a

15   specific victim."  *Sinclair*, 61 F.4th at 682; *see also id.* ("A 'particularized' danger, naturally,

16   contrasts with a general one.").  In *Sinclair*, the city withdrew from a particular neighborhood,

17   permitting protestors to occupy it for a month.  *Id.* at 676.  The plaintiff alleged that occupants

18   were seen carrying guns, vandalizing homes and businesses, and engaged in open drug use, but

19   that the city did not have an effective plan to provide police protection.  *Id.* at 677.  Instead, the

20   defendant allegedly provided occupiers with portable toilets, lighting, and other support.  *Id.*  The

21   plaintiff's son visited the neighborhood and encountered an individual who believed that the

22   neighborhood was a "no-cop" zone; the individual shot the plaintiff's son at least four times,

23   killing him.  *Id.*  The plaintiff filed suit, alleging that the city affirmatively created a danger by

24   withdrawing the police and providing supplies to encourage the occupation, in addition to

25   portraying the occupation as a fun, peaceful, cop-free protest that incited lawlessness.  *Id.* at 682.

26   The Ninth Circuit, however, found that while the city contributed to the danger to the plaintiff's

27   son, she had not alleged a particularized harm.  *Id.*  The plaintiff had not alleged that the city "had

28   any previous interactions with her son, directed any actions towards him, or even knew of her

13

son's existence until he was killed." *Id.* at 683.  Rather, the plaintiff had alleged that the city's actions made the neighborhood more dangerous for all visitors; thus, "her allegations demonstrate that the City-created danger was a generalized danger experienced by all those members of the public who chose to visit the [area]." *Id.*  Thus, "while the City created an actual danger of increased crime, that danger was not specific to" plaintiff or her son, and her claim failed.  *Id.* at 684.

Here, Plaintiffs argue that Defendants are specifically targeting vehicularly-housed persons through the RV Ordinance.  (Pls.' Opp'n at 15.)  Plaintiffs point to their interrogatory responses, which describes the general issues that Plaintiffs and other individuals with disabilities would have; for example, individuals with mobility disabilities may have trouble getting up off the ground, individuals with medical conditions may have problems taking or storing medications, and individuals with mental health disabilities may have a greater feeling of safety in a locked vehicle.  (*Id.* (citing 7/11/24 Grutzmacher Decl., Exh. 12 at 6; Exh. 14 at 7).)  Plaintiffs, however, fail to explain how this satisfies *Sinclair*'s particularity requirement.  The RV Ordinance effectively affects all individuals who would park their RVs, with different impacts on vehicularly-housed persons -- both with and without disabilities.  Plaintiffs identify possible harms that may affect people with particular disabilities, but it is unclear how this demonstrates that the danger is particularly *directed* at Plaintiffs.  *Compare with Sinclair*, 61 F.4th at 682-83.

Accordingly, the Court finds that Plaintiff has failed to identify a particularized danger, and thus GRANTS Defendant's motion for summary judgment as to Plaintiffs' third claim.

### iii.    Claim 4: Equal Protection

Both Plaintiffs and Defendant seek summary judgment as to the equal protection claim. (Pls.' Mot. for Summ. J. at 20; Def.'s Mot. for Summ. J. at 16.)  "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.  But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  "When a law exhibits a desire to

2    harm an unpopular group, courts will often apply a 'more searching' application of rational basis

3    review."  *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018); *see also City*

4    *of Cleburne*, 473 U.S. at 441-42 ("where individuals in the group affected by the law have

5    distinguishing characteristics relevant to interests the State has the authority to implement, the

6    courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how, and

7    to what extent those interests should be pursued").  Thus, the government "may not rely on a

8    classification whose relationship to an asserted goal is so attenuated as to render the distinction

9    arbitrary or irrational."  *City of Cleburne*, 473 U.S. at 446.

10        Here, Plaintiffs assert that the RV Ordinance is targeting vehicularly-housed individuals.

11   (Pl.'s Mot. for Summ. J. at 22.)  As this "is not a traditionally suspect class, a court may strike

12   down the challenged statute under the Equal Protection Clause if the statute serves no legitimate

13   government purpose *and* if impermissible animus toward an unpopular group prompted the

14   statute's enactment."  *Animal Legal Def. Fund*, 878 F.3d at 1200.

15        The parties largely dispute whether there was impermissible animus towards the

16   vehicularly-housed.  (Pl.'s Mot. for Summ. J. at 22; Def.'s Opp'n at 18-19.)  Regardless, however,

17   the Court finds that Defendant is entitled to summary judgment because Defendant has established

18   that the RV Ordinance serves other legitimate government purposes.  As discussed above with

19   respect to the Excessive Fines claim, Defendant has established that the RV Ordinance was

20   enacted in response to concerns about public safety and health, as well as the availability of

21   parking.  Again, Plaintiffs argue that the parking justification was pretextual, pointing to the lack

22   of a study regarding parking availability and the 2018 report.  (Pl.'s Mot. for Summ. J. at 22.)

23   Plaintiffs still fail to explain why a parking study was required, or how the 2018 report is relevant

24   to the conditions that existed years later.  This alone is sufficient to warrant summary judgment in

25   favor of Defendant, as the RV Ordinance can only be struck down if there is "**no** legitimate

26   governmental purpose."  *Animal Legal Def. Fund*, 878 F.3d at 1200 (emphasis added).  Likewise

27   while Plaintiffs argue that the RV Ordinance's goal of actively regulating the parking of RVs is

28   improper, Defendant points out that this was related to the public health and safety issues that had

United States District Court
Northern District of California

1   arisen over the years with respect to RVs.  (Def.'s Opp'n at 21; *see also* 7/11/24 Grijalva Decl.,

2   Exh. 22 (RV Ordinance, stating that "WHEREAS, conditions of extreme peril to the safety of

3   persons and property has arisen within the City as to homeless in general and particularly as to

4   those who are living in RVs or cars on Morris Street and Laguna Park Way, and that action is

5   needed").  As discussed above, this too would support the RV Ordinance.  Thus, the RV

6   Ordinance "does not offend the Equal Protection Clause because it does not rest exclusively on an

7   'irrational prejudice' against" vehicularly-housed individuals.  *Animal Legal Def. Fund*, 878 F.3d

8   at 1201.

9          Accordingly, the Court GRANTS Defendant's motion for summary judgment, and

10  DENIES Plaintiff's motion for summary judgment as to the equal protection claim.

11              **iv.     Claim 5 and 11: Unreasonable Seizure of Property**

12         Defendant moves for summary judgment as to Plaintiffs' unreasonable seizure claim.

13  (Def.'s Mot. for Summ. J. at 19.)  Again, the RV Ordinance permits the towing of vehicles.  As no

14  Plaintiff has had their RV towed pursuant to the RV Ordinance, Plaintiffs are bringing a facial

15  challenge to the RV Ordinance's towing provision.

16         "Because warrantless searches and seizures are *per se* unreasonable, the government bears

17  the burden of showing that a warrantless search or seizure falls within an exception to the Fourth

18  Amendment's warrant requirement."  *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir.

19  2012).  Here, Defendant points to the "community caretaking" exception.  (Def.'s Mot. for Summ.

20  J. at 19.)  Under this exception, "police officers may impound vehicles that jeopardize public

21  safety and the efficient movement of vehicular traffic.  Whether an impoundment is warranted

22  under this community caretaking doctrine depends on the location of the vehicle and the police

23  officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism

24  or theft."  *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (internal quotation

25  omitted).  A citation for a non-criminal traffic violation "is not relevant except insofar as it affects

26  the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety

27  or is at risk of loss."  *Id.*  That said, the Supreme Court has recognized that "[p]olice will also

28  frequently remove and impound automobiles which violate parking ordinances and which thereby

1    jeopardize both the public safety and the efficient movement of vehicular traffic." *South Dakota*

2    *v. Opperman*, 428 U.S. 364, 369 (1976).

3          Defendant argues that there are scenarios where a vehicle will be towed under the RV

4    Ordinance that would fall under the community caretaking exception, such as when an RV is

5    blocking access to parking for public facilities or local businesses, is parked in a way that

6    interferes with street cleaning or road repair activities, or is responsible for some of the public

7    health and safety issues that existed with the prior RV encampment.  (Def.'s Mot. for Summ. J. at

8    20.)  Plaintiffs, in turn, contend that the community caretaking doctrine would not apply to a

9    vehicle that is stationary, not obstructing traffic, located where other vehicles are allowed to park,

10   and not overstaying a meter.  (Pls.' Opp'n at 17.)  Again, to prevail on a facial challenge, Plaintiffs

11   "must establish that no set of circumstances exists under which the Act would be valid." *Salerno*,

12   481 U.S. at 745.  It is not sufficient for Plaintiffs to identify one set of circumstances where the

13   RV Ordinance would be void; thus, Plaintiffs' failure to challenge the validity of towing a vehicle

14   that is, for example, affecting the efficient movement of vehicular traffic by taking up parking

15   needed by other vehicles for use at public facilities or local facilities is fatal to their facial

16   challenge.  The Court therefore GRANTS Defendant's motion for summary judgment as to the

17   unreasonable seizure of property claim.

18              **v.    Claim 6: Procedural Due Process**

19         Defendant moves for summary judgment as to Plaintiffs' procedural due process claim.

20   (Def.'s Mot. for Summ. J. at 20.)  Plaintiffs' procedural due process claim concerns notice when a

21   vehicle is towed.  (Compl. ¶ 85.)  Again, as no Plaintiff has had their RV towed pursuant to the

22   RV Ordinance, Plaintiffs are bringing a facial challenge.

23         "Due process requires that individualized notice be given before an illegally parked car is

24   towed unless the state has a 'strong justification' for not doing so." *Grimm v. City of Portland*,

25   971 F.3d 1060, 1063 (9th Cir. 2020); *see also id.* at 1064 ("In short, pre-towing notice is

26   presumptively required.").  The notice must be "reasonably calculated, under all the

27   circumstances, to apprise interested parties of the pendency of the action and afford them an

28   opportunity to present their objections." *Id.* at 1068.

1    Defendant identifies several ways notice is provided, including the publication of its

2    ordinances on the website, the posting of a sign at the entrance to the city and at Morris Street,

3    its pattern and practice of issuing warnings before any tows.  (Def.'s Mot. for Summ. J. at 21.)

4    The Court agrees with Plaintiff that it is unclear how the publication of its ordinances on the

5    website and the posting of a sign is sufficient to provide *individualized* notice prior to towing.[5]

6    Defendant, however, also states that it has a pattern and practice of issuing warnings before any

7    tows.  (Def.'s Mot. for Summ. J. at 21.)  While Plaintiffs dispute the evidence as to whether

8    Defendant does, in fact, have such a pattern and practice, this is beside the point.  Because this is a

9    facial challenge, Plaintiffs must establish that there is no situation in which the RV Ordinance

10   applies that would not be valid.  If Defendant, for example, provides an individualized, verbal

11   warning to an RV owner before towing, Plaintiff does not suggest that this would be insufficient to

12   provide the required individualized notice.  Thus, because there are circumstances in which

13   Defendant can provide adequate notice to satisfy the requirements for procedural due process,

14   Plaintiff's facial challenge fails.  The Court GRANTS Defendant's motion for summary judgment

15   as to the procedural due process claim.

16              **vi.    Claim 7: Void for Vagueness**

17        Both Plaintiffs and Defendant move for summary judgment as to Plaintiffs' void for

18   vagueness claim.  (Pls.' Mot. for Summ. J. at 15; Def.'s Mot. for Summ. J. at 21.)  Unlike other

19   facial challenges, the Ninth Circuit has concluded that the Supreme Court "expressly rejected the

20   notion that a statutory provision survives a facial vagueness challenge merely because some

21   conduct clearly falls within the statute's scope."  *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th

22   Cir. 2018); *see also id.* (finding that "the Court rejected the legal standard 'that a statute is void for

23   vagueness only if it is vague in all its applications.'") (quoting *Johnson v. United States*, 576 U.S.

24   _____

25   [5] To the extent that Defendant relies (in its reply) on *United States v. Locke*, 471 U.S. 84 (1985)
     for the proposition that legislatures provide constitutionally adequate process when altering
26   substantive rights through enactment of rules of general applicability by enacting a statute and
     publishing it, Defendant cites no authority that *Locke* would apply to the issue of whether there
27   was adequate *individualized* notice prior to a towing.  (*See* Def.'s Reply at 14.)  In any case,
     arguments made for the first time on reply are improper.  *See In re Estate of Saunders*, 745 F.3d at
28   962 n.8 ("Arguments raised . . . only on reply, are generally deemed waived.").

591, 624-25 (2015)).  Rather, "[a]n ordinance is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Gospel Missions of Am. v. City of L.A.*, 419 F.3d 1042, 1047 (9th Cir. 2005) (internal quotation omitted).  That said, "perfect clarity and precise guidance have never been required[.]"  *Id.* (internal quotation omitted); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language.").[6]

Here, Plaintiffs identify four provisions of the RV Ordinance that it asserts are unconstitutionally vague: (1) the meaning of "Recreational Vehicle," (2) the meaning of how a street is "zoned," (3) the meaning of parking "on a park, square, or alley," and (4) the meaning of "city-related business."  (Pl.'s Mot. for Summ. J. at 16-18.)  As a procedural matter, Defendant argues that other than the meaning of "Recreational Vehicle," Plaintiffs did not identify the other three provisions as being unconstitutionally vague in their complaint.  (Def.'s Opp'n at 23.)  Thus, Defendant argues that Plaintiffs are raising new theories of vagueness for the first time in the motion for summary judgment.  (*Id.*)

In *Desertrain v. City of Los Angeles*, the plaintiff challenged the enforcement of a municipal code section as violating due process but did not specifically allege that the statute was unconstitutionally vague until summary judgment proceedings.  754 F.3d 1147, 1152, 1154 (9th Cir. 2014).  The Ninth Circuit found that the district court abused its discretion by not addressing the vagueness claim, explaining that "[w]here plaintiffs fail to raise a claim properly in their proceedings, if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment under Fed.R.Civ.P. 15(b)."  *Id.* at 1154 (cleaned up).  The Ninth Circuit found amendment was warranted after considering the five factors that "are taken into

_____

[6] Plaintiffs assert (in their reply) that in *Forbes v. Napolitano*, the Ninth Circuit found that "where a statute criminalizes conduct, the law may not be impermissibly vague in any of its applications." 236 F.3d 1009, 1012 (9th Cir. 2000).  Notably, *Forbes* has never been cited by another case for this proposition.  Indeed, in *Phelps v. Budge*, the Ninth Circuit explained: "This is not the law. The quoted language from *Forbes* was amended by this court to provide that a 'law may be invalidated on vagueness grounds even if it could conceivably have some valid application.'"  188 Fed. Appx. 616, 619 (9th Cir. 2006).

1    account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to

2    the opposing party, futility of amendment, and whether the plaintiff had previously amended the

3    complaint." *Id.* (internal quotation omitted).

4         The same conclusion applies here.  First, there is no evidence of bad faith, and Defendant

5    does not suggest otherwise.  Second, while the Court agrees with Defendant that there does not

6    appear to be any justification for the failure to earlier request amendment, "[u]ndue delay by itself

7    is insufficient to justify denying leave to amend."  *United States v. United Healthcare Ins. Co.*,

8    848 F.3d 1161, 1184 (9th Cir. 2016).  Third, Defendant has identified no prejudice.  Notably, the

9    Ninth Circuit has found that questioning during deposition can put a party on notice of a

10   vagueness challenge.  *See Desertrain*, 754 F.3d at 1154 ("Plaintiffs' attorney repeatedly asked

11   Defendants during their depositions whether Task Force officers had any criteria to limit their

12   enforcement of Section 85.02 . . . . This questioning put Defendants on notice that Plaintiffs were

13   concerned with the vagueness of Section 85.02[.]").  Here, Plaintiffs questioned Defendant's

14   witnesses about its other three bases for vagueness.  (Pls.' Reply at 10.)  Further, Defendants had

15   the opportunity to fully litigate the vagueness issue in its opposition.  Fourth, there is no showing

16   that amendment would be futile.  Finally, Plaintiffs have never amended their complaint.  Thus,

17   amendment is warranted, and the Court will consider each basis for vagueness.

18              a.   Meaning of "Recreational Vehicle"

19        SMC § 10.76.030 states:

20              "Recreational Vehicle" or "RV" means a motorhome, travel trailer,
                truck camper, camping trailer, or other vehicle or trailer, with or
21              without motive power, designed or altered for human habitation for
                recreational, emergency, or other human occupancy.  "Recreational
22              vehicle" specifically includes, but is not limited to: a "recreational
                vehicle" as defined by Cal. Health & Safety Code § 18010; a "truck
23              camper" as defined by Cal. Health & Safety Code § 18013.4; a
                "camp trailer" as defined in Cal. Veh. Code § 242; a "camper" as
24              defined in Cal. Veh. Code § 243; a "fifth-wheel travel trailer" as
                defined in Cal. Veh. Code § 324; a "house car" as defined by Cal.
25              Veh. Code § 362; a "trailer coach" as defined in Cal. Veh. Code §
                635; a van camper; or a van conversion.
26

27   Specifically, Plaintiffs take issue with the phrase "altered for human habitation."  (Pls.' Mot. for

28   Summ. J. at 9, 17.)

20

1    In *Desertrain*, the Ninth Circuit found that the prohibition on using a vehicle "as living

2    quarters either overnight, day-by-day, or otherwise" was vague, as the statute did not define

3    "living quarters" or "otherwise." 754 F.3d at 1155. Further, there was actual evidence of the

4    city's enforcement practices, under which neither sleeping in the vehicle nor keeping a plethora of

5    belongings was required to constitute a violation of the statute. *Id.* Under such circumstances, it

6    was unclear what behavior was prohibited.

7    Here, Defendant argues that the term is not vague because "altered for human habitation"

8    follows a list of specifically defined vehicle types, and must therefore be read in the context of

9    those examples. (Def.'s Opp'n at 24.) Defendant further argues that the term "altered" modifies

10    "or other vehicle or trailer," and is therefore clearly intended to describe a person altering a

11    vehicle or trailer to make it fit for human habitation.

12    Plaintiffs, in turn, argue that it is not clear if "altered for human habitation" requires a

13    permanent modification or not. (Pl.'s Mot. for Summ. J. at 9, 17.) In support, Plaintiffs point to

14    the deposition testimony of various city officials.[7] For example, Police Chief Ronald Nelson and

15    Mayor Rich both testified that a "recreational vehicle" would need to be altered in a more

16    permanent manner, such that a vehicle with a mattress or sleeping bag would not qualify as a RV.

17    (Nelson Dep. at 27:9-24; Rich Dep. at 68:15-70:13.) Former Police Chief Kilgore testified that

18    the purpose of the RV Ordinance was to regulate parking of vehicles actively used as sleeping

19    accommodations, which would include vans in which people were sleeping. (Kilgore Dep. at

20    31:17-32:10.) Finally, former City Manager/City Attorney McLaughlin testified that the RV

21    Ordinance was intended to address people who were living in their cars. (McLaughlin Dep. at

22    97:22-98:7.) When asked about the meaning of "altered for human habitation," McLaughlin

23    testified that he could "argue it both ways" in terms of whether a change needed to be permanent.

24    (McLaughlin Dep. at 47:10-14.) That said, McLaughlin stated that it could be a change to the

25    physical characteristics or to something that is loaded into the vehicle as long as it was not easily

26

27    [7] Defendant objects to this testimony as inadmissible legal conclusions. (Def.'s Opp'n at 25.) The
     Court does not consider this testimony as legal conclusions for what the RV Ordinance means.

28    Rather, the Court considers this testimony for how a person of ordinary intelligence may interpret
     the RV Ordinance, to the extent that it may be relevant.

1    removed.  (McLaughlin Dep. at 47:14-48:6; *see also* McLaughlin Dep. at 47:4-9 (testifying that a

2    physical change was required, such that putting a mattress in the back seat of a sedan would not

3    constitute an alteration).)  McLaughlin went on to state that occupying a vehicle as a living space

4    would fall into the definition, but he distinguished between a sleeping bag or a third-row seat

5    being pulled down not being sufficient and the inclusion of a built-in cooking area or refrigerated

6    unit being sufficient.  (McLaughlin Dep. at 49:16-50:19, 52:8-53:19.)

7         The Court finds that the term "altered for human habitation," as written, is not vague.  As

8    Defendant points out, the language itself is clear that "altered" requires a change to a vehicle that

9    makes it fit for human occupancy.  The language is distinguishable from *Desertrain* in that it is in

10   the context of other specific types of vehicles, which would allow an ordinary reader to understand

11   that the type of change required needs to make a vehicle comparable to those specifically

12   identified.  While Plaintiffs complain that it is unclear if the alteration must be permanent or not,

13   and whether the alteration can be to a truck or car, this does not make the term impermissibly

14   vague.  Again, the issue is whether the alteration is sufficient to change the vehicle to make it fit

15   for human occupancy.  The testimony cited by Plaintiffs makes clear that this alteration must be

16   something more than simply putting a mattress or sleeping bag in a vehicle; rather, the alteration

17   must be more permanent and/or not easily removed, similar to the specific vehicles identified in

18   SMC § 10.76.030.[8]  Thus, it is unclear why this would be so vague as to "fail[] to provide people

19   of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."

20   *Gospel Missions of Am.*, 419 F.3d at 1047.

21              b.  Meaning of "Zoned"

22        The RV Ordinance prohibits parking of an RV "on any public street in the City that is

23   zoned residential at any time," and parking "on any public street in the City that is zoned

24   commercial, industrial, or community facility at any time between the hours of 7:30 a.m. and

25   10:00 p.m."  (SMC § 10.76.040.)  Plaintiffs argue that referring to streets by their zoning is

26

27   ─────────────────────
     [8] While former Police Chief Kilgore and former City Manager/City Attorney McLaughlin stated
28   that the RV Ordinance was intended to address people living in vehicles, this is a separate issue
     from whether the *specific language* of the RV Ordinance is vague.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    ambiguous because streets are not zoned; rather, it is the property parcels that are zoned.  (Pls.'

2    Mot. for Summ. J. at 10, 17.)  Defendant, in turn, acknowledges that the streets are not themselves

3    zoned, but that a person of ordinary intelligence would understand that a street within a residential

4    district would likewise be residential.  (Def.'s Opp'n at 26.)  Further, if a street borders two zoning

5    districts, with one side zoned community facility and the other side zoned residential, then the RV

6    Ordinance would allow overnight parking on the side zoned community facility and no parking on

7    the side zoned residential.  (*Id.*)

8            It is not clear how this provision is vague.  While streets are not themselves zoned, the

9    Court agrees with Defendant that a person of ordinary intelligence would understand that their

10   "zoning" is tied to the adjoining property parcels.  This applies even where each side of the street

11   adjoins property parcels zoned in different ways; the zoning would apply to that side of the street.

12   While Plaintiffs point to the testimony of one individual -- former Police Chief Kilgore -- as

13   offering a contrary interpretation to this hypothetical, it is not apparent that the opinion of one

14   person can create a genuine dispute of material fact as to whether the plain language is clear.  *See*

15   *Hernandez v. City of Phoenix*, 541 F. Supp. 3d 996, 1002 (D. Ariz. 2021) ("But circumstances

16   where deponents randomly provide equivocal responses to hypotheticals concerning the Policy's

17   potential application does not aid Plaintiffs' [vagueness] claim.").  Further, "[s]peculation about

18   possible vagueness in hypothetical situations not before the Court will not support a facial attack

19   on a statute when it is surely valid in the vast majority of its intended applications." *Tucson v.*

20   *City of Seattle*, 91 F.4th 1318, 1330 (9th Cir. 2024).

21           In the alternative, Plaintiffs argue that there are no street signs indicating how an area is

22   zoned, but cites no authority that such signage is required to show a lack of vagueness.  *Compare*

23   *with Washington Cty. v. Stearns*, 3 Ore. App. 366, 370 (1970) (rejecting argument that an

24   ordinance was vague where it adopted detailed zoning regulations, and the defendant could have

25   referred to the ordinance and zoning maps to ascertain the zoning of his property).  Plaintiffs also

26   argue that Defendant's zoning map on the internet is insufficient because there are two zoning

27   designations where it is unclear if the zoning is residential, commercial, industrial, or community

28   facility.  (Pls.' Mot. for Summ. J. at 17.)  Specifically, the zoning map zones certain areas as

"Downtown Core" and "Planned Community." Defendant responds that the Municipal Code clarifies the zoning districts; for example, the "Downtown Core" district is located in the Municipal Code chapter concerning commercial, office, and industrial districts. (Def.'s Opp'n at 27; 8/1/24 Grutzmacher Decl., Exh. 6.) The Court agrees that the availability of the zoning maps and Municipal Code are sufficient to allow a person of ordinary intelligence to determine where they can and cannot park.

Moreover, as a practical matter, there is an appreciable difference between residential and commercial areas that a person of ordinary intelligence would understand. Even without referring to a zoning map, a person of ordinary intelligence would be able to use their common sense to determine from their surroundings if they are in a residential neighborhood or a downtown commercial area. While the parties may argue about the legal effect of each specific parcel and zoning designation, again, the question is whether a person of ordinary intelligence would understand what is prohibited.

c.  Meaning of Parking "on a Park, Square, or Alley"

The RV Ordinance makes it "unlawful for a person to park or leave standing any recreational vehicle on any park, square, or alley at any time." (SMC § 10.76.040(C).) Plaintiffs contend there is some confusion as to whether this prohibition extends to adjacent streets and parking lots. (Pls.' Mot. for Summ. J. at 18.) The Court disagrees. As Defendant points out, the language itself is unambiguous, and does not state or suggest that it would extend to adjacent streets and parking lots. Again, Plaintiffs' reliance on the testimony of a single individual who believed that prohibition of parking on the square would include the parking lot that surrounded the square based on what they remembered of the map is not convincing; "[s]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute where it is surely valid in the vast majority of its intended applications." *Tucson*, 91 F.4th at 1330.

d.  Meaning of "City-Related Business"

Finally, the RV Ordinance makes it "unlawful for a person to park or leave standing any recreational vehicle in any City-owned parking lot at any time unless that person is conducting

24

1    City-related business during business hours.  The City-owned parking lots for the Police, Fire,

2    Public Works, and City Hall buildings may only be used when actively conducting business at

3    those specific buildings."  (SMC § 10.76.040.)  Plaintiffs argue that there are conflicting

4    interpretations of "City-related business," again relying on deposition testimony of various city

5    officials.  (Pls.' Mot. for Summ. J. at 13, 18.)

6        Police Chief Nelson interpreted "City-related business" as business being conducted with

7    the city, such as reporting a crime and obtaining a business permit.  (Nelson Dep. at 40:3-15.)  He

8    did not believe it would include walking on the local trail or seeing a movie.  (Nelson Dep. at

9    40:16-22.)  Former City Manager/City Attorney McLaughlin interpreted "City-related business" to

10   mean the municipal use for whatever the parking lot was designated for, pointing to an example of

11   a parking lot designated for use at the library, city hall, and senior center being available for

12   conducting business only at those locations.  (McLaughlin Dep. at 76:11-22.)  Mayor Rich, in

13   contrast, believed that individuals parking in a public lot would not have to be engaged in business

14   with the city government, but could park there to use services offered by any businesses within the

15   city such as a bookstore, supermarket, or public park.  (Rich Dep. at 104:19-105:13.)  Police Chief

16   Kilgore stated that the City Council used a more expansive interpretation of "City business" to

17   include services with any businesses within the city, such as an ice cream shop or hiking on trails

18   within the city limits.  (Kilgore Dep. at 55:3-56:4.)  Finally, Parking Enforcement officer Michelle

19   Beckman testified that she would not cite someone using a business such as a grocery store or

20   getting something to eat.  (7/11/24 Grijalva Decl., Exh. 4 ("Beckman Dep.") at 38:16-21.)

21   Defendant, in turn, asserts that as long as the city-owned lot is not tied to the Police, Fire, Public

22   Works, and City Hall buildings, an RV can park in a city-owned lot to shop, visit a restaurant,

23   enjoy public facilities, or conduct any other business within the city.  (Def.'s Opp'n at 28.)

24       The Court finds that the plain language of "City-related business" is clear -- it concerns

25   business with the city government.  The second sentence supports this definition; it states that

26   certain city lots connected to specific city government buildings can only be used for those

27   buildings.  The fact that Defendant interprets "City-related business" more broadly is of no

28   consequence; it does not make the language vague, even if it does not comport with Defendant's

United States District Court
Northern District of California

1    own intent.  Indeed, a person of ordinary intelligence would likely not be privy to the city

2    council's intent when they passed the RV Ordinance, and thus would not be confused by

3    Defendant's differing interpretation of this provision.  Rather, a person of ordinary intelligence

4    would read the RV Ordinance as it is written and understand it to mean that RVs can park in city-

5    owned lots only if conducting business with the city government.  If Defendant intended the

6    ordinance to have a more expansive meaning, it should so amend.

7                            e.  Discriminatory Enforcement

8            Finally, Plaintiffs argue that the RV Ordinance is void for vagueness because it authorizes

9    and encourages discriminatory enforcement.  (Pls.' Mot. for Summ. J. at 19.)  "An

10   unconstitutionally vague law invites arbitrary enforcement . . . if it leaves judges and jurors free to

11   decide, without any legally fixed standards, what is prohibited and what is not in each particular

12   case."  *Beckles v. United States*, 580 U.S. 256, 266 (2017); *see also Grayned*, 408 U.S. at 108-09

13   ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for

14   resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and

15   discriminatory application.")  For example, in *Coates v. Cincinnati*, the Supreme Court found a

16   law was unconstitutionally vague because it prohibited conduct that was "annoying to persons

17   passing by."  402 U.S. 611, 612 (1971).  The Supreme Court, however, pointed out that "[c]onduct

18   that annoys some people does not annoy others."  *Id.* at 614.  In short, rather than prohibit specific

19   conduct -- *e.g.*, blocking sidewalks, obstructing traffic, or littering -- the statute was "dependent

20   upon each complainant's sensitivity."  *Id.* at 613-14.

21           Here, Plaintiffs assert that the RV Ordinance will allow discriminatory enforcement

22   because it was passed with the expectation that it would be "complaint-driven."  (Nelson Dep. at

23   35:22-36:1.)  The Court observes that this testimony was specific to the limited exception for

24   loading and unloading RVs in residential areas, not to the entire RV Ordinance.   Former Police

25   Chief Kilgore also commented that the police were less likely to go after a VW van that had been

26   modified for habitation but was in downtown for a meal, as opposed to a vehicle that was staying

27   in the same spot for long periods of time as that would suggest they were actually living in the

28   vehicle.  (7/11/24 Grijalva Decl., Exh. 24.)  The fact that the police may selectively enforce the

1    RV Ordinance, however, does not mean that the RV Ordinance delegates basic policy matters to

2    the police, judges, or juries.  This is not a situation where the officers would have to make a

3    determination of what a vague term means, such as "annoying."  Rather, even if a vehicle satisfied

4    the definition of a RV, an officer may choose not to enforce the RV Ordinance not based on their

5    interpretation of the RV Ordinance, but on their discretion.  In short, the standard of conduct is

6    clear; how and when officers enforce the RV Ordinance is not based on officers applying their

7    own sensitivities to determine *whether* the RV Ordinance is actually violated.

8         Accordingly, the Court concludes that the RV Ordinance is not void for vagueness.  The

9    Court GRANTS Defendant's motion for summary judgment, and DENIES Plaintiffs' motion for

10   summary judgment.

11        **vii.    Claims 8 and 9: Right to Travel**

12        Defendant seeks summary judgment as to Plaintiffs' right to travel claim.  "The right to

13   travel, or right of migration, now is seen as an aspect of personal liberty which, when united with

14   the right to travel, requires 'that all citizens be free to travel throughout the length and breadth of

15   our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this

16   movement.'"  *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1098 (quoting *Shapiro v. Thompson*,

17   394 U.S. 618, 629 (1969)).  "A state law implicates the right to travel when it actually deters such

18   travel, when impeding travel is its primary objective, or when it uses any classification which

19   serves to penalize the exercise of that right."  *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898,

20   903 (1986).  That said, "[t]he right to travel does not . . . endow citizens with a right to live or stay

21   where one will."  *Tobe*, 9 Cal. 4th at 1103.

22        The Court finds that the RV Ordinance does not impinge on the right to travel.  In *Potter v.

23   City of Lacey*, the Ninth Circuit found that an ordinance which prohibited RV owners from

24   parking their RVs on the city's public spaces and roadways for longer than four hours within any

25   twenty-four-hour period "d[id] not violate any right to free movement."  46 F.4th 787, 798 (9th

26   Cir. 2022).  Specifically, "[t]he RV Parking Ordinance does not prevent RV owners from traveling

27   locally through public spaces and roadways."  *Id.* at 799.  Rather, RV owners could still "travel

28   along the same public spaces and roadways on which it forbids them from parking for more than

1    four hours." *Id.*; *see also Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 55 n.1 (2015) (an

2    ordinance making it unlawful to camp on public or private property ordinance did not violate the

3    right to travel because "[t]he ordinance, on its face, does not restrict travel into or out of the City

4    [and] does not discriminate based on residency or duration of residency").

5           Here, Plaintiffs assert that the RV Ordinance deters Plaintiffs from traveling because they

6    cannot park anywhere in the city during the day, thus preventing them from traveling into the city

7    at all. (Pls.' Opp'n at 19.) The RV Ordinance itself, however, does not restrict travel into or out

8    of the city, and does not discriminate based on residency. Rather, like the ordinance in *Potter*, it

9    prohibits the parking of a certain type of vehicle during certain parts of the day. Plaintiffs may

10   still freely enter into the city; they cite no authority that they are entitled to enter into the city in

11   the *vehicle* of their choice or for any purpose that they desire. There is also no suggestion that the

12   RV Ordinance favors residents over non-residents; both residents and non-residents are subject to

13   the same prohibitions on parking RVs. Finally, as Defendant pointed out at the hearing, a person

14   driving an RV could still park in private lots, such as a supermarket parking lot, if the private

15   business owner so allows.

16          The Court therefore GRANTS Defendants' motion for summary judgment as to Plaintiffs'

17   right to travel claims.

18          **viii.   Claims 12, 13, and 14: Violation of the ADA, California Disabled Persons**
             **Act, and California Government Code § 11135**
19

20          Finally, Defendant seeks summary judgment as to Plaintiffs' disability claims. Plaintiffs

21   bring claims under various disability laws, including Title II of the ADA, asserting that RV

22   Ordinance excludes Plaintiffs from a city service, program, or activity on the basis of their

23   disability.[9] (Pls.' Opp'n at 20.) To assert a claim under Title II of the ADA, a plaintiff must

24   demonstrate: (1) they are an individual with a disability, (2) they are otherwise qualified to

25   participate in or receive the benefit of a public entity's services, programs, or activities, (3) they

26   were excluded from participation in or denied the benefits of the public entity's services,

27   _____

28   [9] There is no dispute that Plaintiffs' disability claims are coextensive, and thus the same standard
     applies to them all. (Def.'s Mot. for Summ. J. at 27; Pl.'s Opp'n at 20 n.15.)

United States District Court
Northern District of California

1    programs, or activities, or were otherwise discriminated against by the public entity, and (4) the

2    exclusion, denial of benefits, or discrimination was due to their disability. *O'Guinn v. Lovelock*

3    *Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007). Plaintiffs have the burden of establishing the

4    elements of their prima facie case. *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008).

5    Assuming that Plaintiffs Corley and Wetch are individuals with disabilities, Plaintiffs must

6    demonstrate the remaining elements.

7        Plaintiffs assert that "on-street parking" is a city-program that must be accessible. (Pls.'

8    Opp'n at 22.) Plaintiffs, however, do not explain why this includes the right to park an RV on the

9    streets, nor do they provide any authority in support. Even if Plaintiffs have a disability-related

10   need to *reside* in their vehicles when they lack other housing, this does not mean they are unable

11   to access on-street parking; Plaintiffs may still park in the city, so long as it is not in an RV.

12   Plaintiffs do not assert that they are unable to drive any vehicle except an RV due to their

13   disabilities. Indeed, Plaintiff Corley has testified that she owns a personal vehicle, which she is

14   then able to park in the city when running errands and traveling around town. (*See* 7/11/24

15   Grutzmacher Decl., Exh. 15 at 29:22-30:4, 47:10-15.)

16       Further, even if Plaintiffs could establish a prima facie case, "[t]he public entity may then

17   rebut this by showing that the requested accommodation would require a fundamental alteration or

18   would produce an undue burden." *Pierce*, 526 F.3d at 1217. As an initial matter, the parties

19   dispute whether Plaintiffs made an adequate request for reasonable accommodations. (Def.'s Mot.

20   for Summ. J. at 27; Pls.' Opp'n at 23.) Specifically, Plaintiffs' counsel sent a letter demanding

21   that Defendant rescind the ordinance.[10] *See* 8/1/24 Grijalva Decl., Exh. 4.) It is unclear that a

22   letter demanding that an entire ordinance be rescinded constitutes a request for a reasonable

23   accommodation. In any case, Defendant correctly points out that "[a] program for public

24   parking . . . is fundamentally different than a program allowing for residing on City streets."

25   (Def.'s Reply at 17.) Plaintiffs are effectively requesting that they be allowed to park their RVs in

26

27   ─────────────────────

28   [10] Plaintiffs assert that they also requested that Defendant not enforce the RV Ordinance against individuals with a disability-related need to reside in their vehicles. (Pls.' Opp'n at 23.) Plaintiffs do not provide a pin cite, nor could the Court find such a request in their demand letter.

United States District Court
Northern District of California

the city because they need to be able to live in their RVs, not because they are unable to access parking otherwise. The Court knows of no authority that would support such a demand.

Accordingly, the Court GRANTS Defendant's motion for summary judgment on Plaintiffs' disability claims.

### IV.    CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiffs' motion for partial summary judgment.

IT IS SO ORDERED.

Dated: November 22, 2024

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

30